# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Spanish Court Two Condominium Ass'n v. Carlson**, 2012 IL App (2d) 110473

---

| | |
|---|---|
| Appellate Court Caption | SPANISH COURT TWO CONDOMINIUM ASSOCIATION, Plaintiff and Counterdefendant-Appellee and Cross-Appellant, v. LISA CARLSON, Defendant and Counterplaintiff-Appellant and Cross-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0473 |
| Filed | June 27, 2012 |
| Modified upon denial of rehearing | November 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a forcible entry and detainer action seeking possession of defendant's condominium unit and an award of unpaid assessments, the severance of defendant's counterclaim based on alleged damage to her unit was upheld as not being germane to possession, but the affirmative defense based on damage to her unit due to disrepair of the exterior was reinstated, only as a factual predicate for withholding assessments, since the only legal ground for withholding assessments is a breach of the duty to repair and maintain common elements. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-LM-301; the Hon. Michael J. Fusz, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal

Norman J. Lerum, of Norman J. Lerum, P.C., of Chicago, for appellant.

Diane J. Silverberg, of Kovitz, Shifrin & Waitzman, of Buffalo Grove, for appellee.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices Burke and Hudson concurred in the judgment and opinion.[1]

## OPINION

¶ 1    Plaintiff, Spanish Court Two Condominium Association, brought an action against defendant, Lisa Carlson, under the Forcible Entry and Detainer Act (the Forcible Entry Act) (735 ILCS 5/9-111 (West 2010)), seeking possession of her condominium unit and an award of unpaid general and special assessments, late fees, and costs and attorney fees. Defendant appeals from the trial court's pretrial ruling dismissing her affirmative defenses and counterclaim, which were premised on plaintiff's alleged failure to maintain the exterior of the building, resulting in damage to the interior of defendant's unit, and on plaintiff's alleged failure to repair a toilet that was damaged when plaintiff demolished part of defendant's unit while attempting to determine the source of a leak into a neighboring unit. Defendant also appeals from the court's subsequent judgments granting plaintiff the right to take possession of the unit and imposing a monetary award. The latter consisted of (1) delinquent general, or monthly, assessments as well as a special assessment for replacement of patio doors, (2) late fees for the delinquent assessments, and (3) costs and attorney fees. Plaintiff cross-appeals from the court's refusal to enter judgment for a special assessment to upgrade the fire alarms and elevator on the condominium property. Plaintiff also requests an award of costs and attorney fees on appeal. We hold that the trial court was correct in severing the counterclaim but that it erred in striking the affirmative defenses in their entirety. We reverse and remand for partial reinstatement of the affirmative defenses.

¶ 2                                    BACKGROUND

¶ 3    At all times relevant here, defendant was the owner of a condominium unit in a building

_____

[1]Justice John Bowman participated in the original disposition of this cause. He passed away on September 26, 2012, before the panel reached a decision on plaintiff's petition for rehearing. Justice Donald Hudson was assigned in place of Justice Bowman so that a panel of three could rule on the petition.

governed by plaintiff pursuant to its condominium declaration. Plaintiff's forcible entry and detainer (FED) complaint, filed February 5, 2010, brought two counts. Count I was entitled "Possession" and cited provisions of the Forcible Entry Act. Plaintiff alleged that it had approved, pursuant to the declaration, "monthly and special assessments and other common expenses," and that defendant was delinquent in paying the common expenses. Plaintiff alleged that defendant had not paid the monthly assessments from August 2009 through January 2010. Plaintiff did not specify the "special assessments" that it claimed defendant owed. As remedies, plaintiff sought both possession of defendant's unit and a monetary award of $2,143.83, which included delinquent monthly and special assessments, late charges, and costs and attorney fees.

¶ 4    Count II of the complaint alleged breach of contract. The count incorporated all of the allegations of count I concerning defendant's failure to pay the common expenses. The count incorporated count I's citations to the Forcible Entry Act and cited no additional authority. Finally, count II did not seek possession but only the same monetary award sought in count I.

¶ 5    On March 18, 2010, defendant filed her combined answer, affirmative defenses, and counterclaim. On November 9, 2010, the trial court granted plaintiff's motion to strike defendant's affirmative defenses and sever her counterclaim. Following a bench trial, the court entered judgment awarding defendant both possession of the unit and a monetary sum comprised of unpaid assessments, late fees, and costs and attorney fees.

¶ 6    The issues in this appeal involve the following two documents: (1) the "Declaration of Condominium Ownership and of Easements, Restrictions and Covenants For Spanish Court II Condominium Development" (Declaration); and (2) the "By Laws of Spanish Court II" (Bylaws). The sole copies in the record, which are the exhibits admitted at trial, are partly illegible (apparently from poor photocopying)[2] but the portions on which the parties rely, and that seem most material to the issues at hand, are legible.

¶ 7    In her combined answer, affirmative defenses, and counterclaim, defendant "admit[ted] that she ha[d] not paid her assessments from August[ ] 2009," but "denie[d] that she owe[d] those assessments in light of the damages she *** incurred as a result of certain property damage sustained by her condominium unit as a result of [defendant's] failure to properly maintain the roof directly above her unit and for destroying property within her unit without justification." Defendant alleged as follows regarding the roof. About 12 years ago, plaintiff replaced the roof directly above defendant's top-floor unit. Plaintiff thereafter failed to undertake "certain [yearly] maintenance procedures" recommended by the company that replaced the roof. As a result of this failure, the roof deteriorated, allowing "a significant amount of water leakage" into defendant's unit. The leak deformed the drywall, disengaging it from the wall studs, and caused the paint to peel. Defendant is "liable to expend significant sums of money to repair the unit." Despite repeated requests by defendant, plaintiff has refused to repair the roof and stop the leak.

¶ 8    Defendant also alleged that the "brickwork directly above [her unit]" has deteriorated and

[2]We are surprised that the trial court did not insist on better copies.

is in need of "repair, recaulking, and tuckpointing." Defendant alleged that "an experienced professional" inspected the brickwork and determined that its condition "has also allowed water to enter into her unit[,] which has contributed to the damage of the walls and internal structure of her unit." Although plaintiff is aware of the deteriorating brickwork, it has refused to repair it.

¶ 9 Finally, defendant alleged that plaintiff failed to finish certain interior repairs. Defendant alleged that, several months ago, plaintiff directed plumbers to enter her unit "and destroy the wall and plumbing in the bathroom *** on the belief that a leak in a neighboring unit was caused by a leaking pipe in the bathroom of [her unit]." The plumbers determined that the leak originated elsewhere. Plaintiff subsequently replaced the drywall and restored the plumbing, but defendant found that her toilet would not work. Although plaintiff is aware of the inoperative toilet, it has refused to repair or replace it.

¶ 10 Defendant advanced two separate affirmative defenses based on the foregoing allegations. Both defenses claimed that the alleged neglect by plaintiff constituted a breach of its covenant under the Declaration to maintain, repair, and replace the common elements of the condominium property utilizing the mandatory assessments collected by plaintiff from unit owners. As her first defense, defendant asserted that plaintiff was "estopped as a matter of law" from seeking past-due assessments and associated late fees, costs, and attorney fees. As her second (and alternative) defense, defendant requested that there be deducted from any monetary award against her an amount between $6,000 and $10,000, the estimated cost of repairing the damage to her unit.

¶ 11 Based on the same allegations, plaintiff counterclaimed for an award of damages between $6,000 and $10,000.

¶ 12 On April 14, 2010, plaintiff filed motions to strike defendant's affirmative defenses and sever her counterclaim. Citing multiple authorities, principally *Sawyier v. Young*, 198 Ill. App. 3d 1047 (1990), plaintiff argued that defendant's affirmative defenses and counterclaim were disallowed by section 9-106 of the Forcible Entry Act (735 ILCS 5/9-106 (West 2010)) because they were "not germane to the distinctive purpose of the proceedings," as that section provides. In an order dated November 9, 2010, the trial court granted the motions, but without explanation. The court struck the affirmative defenses and reassigned the counterclaim to another division of the circuit court.

¶ 13 Defendant argues on appeal that it was error to sever her counterclaim and strike her affirmative defenses. As we explain below, the trial court properly severed the counterclaim in its entirely but erred in striking the affirmative defenses in their entirety.

¶ 14 ANALYSIS

¶ 15 At the outset, we note that plaintiff filed a petition for rehearing of our original disposition in this cause. We allowed answer and reply. Defendant also moved to file a surreply. We grant that motion. As for the merits of the petition, we think it best to address them separately, in the final paragraphs of our analysis.

¶ 16 The issue in this case, which appears to be one of first impression in Illinois, is whether, in an action brought under the Forcible Entry Act by the board of managers of a

-4-

condominium property against a unit owner for possession of the unit due to unpaid assessments, the unit owner may claim as a defense that her responsibility for the assessments was diminished or nullified by the failure of the board to maintain the common elements of the property as required in the condominium instrument. Although there are no prior decisions on point, we hold, by analogy to the case law on actions brought under the Forcible Entry Act by landlords for possession of leased property due to unpaid rent, that the unit owner may claim neglect as a defense to the board's suit under the Act. We further hold, also by analogy to existing case law on suits under the Forcible Entry Act involving leased dwellings, that, with certain narrow exceptions, the unit owner may not counterclaim under the Forcible Entry Act for damages caused to her unit or to her personal property by the board's neglect of the common elements.

¶ 17　　This issue involves consideration of what matters are "germane" under section 9-106 of the Forcible Entry Act. The meaning of a statute is a question of law, which we review *de novo*. See *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003). Our review also requires us to construe contractual provisions, a matter that is likewise subject to *de novo* review. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). In both instances, the aim is to discern the intent of the drafter, the best indicator of which is the language used. See *Gallagher*, 226 Ill. 2d at 233; *Lee*, 208 Ill. 2d at 43. We also note that, in assessing a motion under section 9-106, we assume the truth of all well-pleaded facts. *Heller v. Goss*, 80 Ill. App. 3d 716, 719 (1980).

¶ 18　　Before we address the text of section 9-106, we first examine some preliminary sections of the Forcible Entry Act. As to which persons may bring an action, the Forcible Entry Act provides in relevant part:

　　"(a) The person entitled to possession of lands or tenements may be restored thereto under any of the following circumstances:

* * *

　　(4) When any lessee of the lands or tenements, or any person holding under such lessee, holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise.

* * *

　　(7) When any property is subject to the provisions of the Condominium Property Act [(765 ILCS 605/1 (West 2010))], the owner of the unit fails or refuses to pay when due his or her proportionate share of the common expenses of such property, or of any other expenses lawfully agreed upon or any unpaid fine, the Board of Managers or its agent have served the demand set forth in Section 9-104.1 of this Article [(735 ILCS 5/9-104.1 (West 2010))] in the manner provided for in that Section and the unit owner has failed to pay the amount claimed within the time limit prescribed in the demand ***." 735 ILCS 5/9-102(a)(4), (a)(7) (West 2010).

There is no dispute here that plaintiff has met the prerequisites in section 9-102(a)(7) for a suit under the Forcible Entry Act.

¶ 19　　Next, we note the parallels between what a landlord may seek, and what a condominium board of managers may seek, in an action under the Forcible Entry Act. When, following

appropriate notice to the tenant, the landlord deems the lease terminated due to unpaid rent, the landlord may couple the claim for possession with a claim for unpaid rent. 735 ILCS 5/9-209 (West 2010). Section 9-106 of the Forcible Entry Act (735 ILCS 5/9-106 (West 2010)) reiterates that "a claim for rent may be joined in the complaint, and judgment may be entered for the amount of rent found due." Similarly, a board of managers is not limited to seeking possession alone. Section 9-111(a) of the Forcible Entry Act (735 ILCS 5/9-111(a) (West 2010)) provides:

> "(a) *** [W]hen the action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and judgment in favor of the plaintiff shall be entered for the possession thereof and for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs."

¶ 20    We turn now to section 9-106 of the Forcible Entry Act, which is the subject of conflicting interpretations as it applies to this case. The section provides in relevant part:

> "The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action. Except as otherwise provided in Section 9-120 [(735 ILCS 5/9-120 (West 2010))[3]] no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise. However, a claim for rent may be joined in the complaint, and judgment may be entered for the amount of rent found due." 735 ILCS 5/9-106 (West 2010).

The supreme court has defined "germane" as "closely allied; closely related, closely connected; *** appropriate." (Internal quotation marks omitted.) *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 256 (1970). " 'Forcible entry and detainer is a summary statutory proceeding to adjudicate rights to possession and is unhampered and unimpeded by questions of title and other collateral matters not directly connected with the question of possession.' " *Id.* at 255 (quoting *Bleck v. Cosgrove*, 32 Ill. App. 2d 267, 272 (1961)). Possession and directly related matters might be the only substantive issues for decision in a FED action, but, as our review of the statutory sections revealed, possession is not the sole remedy available to the plaintiff in the action: a landlord may seek overdue rent (735 ILCS 5/9-106, 9-209 (West 2010)), and a condominium board of managers may seek overdue assessments (735 ILCS 5/9-111(a) (West 2010)). Cases involving rented dwellings have held that, where the landlord seeks possession under the Forcible Entry Act for nonpayment of rent, the tenant has the right to defend the action by disputing some or all of the claim for rent. In *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 367 (1972), the supreme court held that an implied warranty of habitability

---

[3]This provision is not relevant here.

exists in a lease for a dwelling in a multiunit building[4] and that section 9-106 of the Forcible Entry Act permits a tenant to claim an alleged breach of the warranty as a defense to an action for possession due to unpaid rent. *Jack Spring*'s rationale for finding an implied warranty of habitability in multiunit dwellings is that, with society's transformation from an agrarian to an industrial society, it can no longer be assumed that tenants have the expertise to make their own repairs to the leased premises as did the "jack-of-all-trades" farmers of old, and hence rent is now paid with the assumption that the dwelling will be maintained by the landlord in a habitable state. *Id.* at 364-66.

¶ 21    In *Peoria Housing Authority v. Sanders*, 54 Ill. 2d 478, 483 (1973), the court, making no mention of *Jack Spring*'s express restriction of its holding to rentals in multiunit buildings (see *Jack Spring*, 50 Ill. 2d at 367), held without qualification that "when an action for possession is based upon nonpayment of rent, the question whether the defendant owes rent to the plaintiff is germane, whether or not the plaintiff seeks judgment for the rent that he says is due." In *Sanders*, the plaintiff, a housing authority, sought possession for nonpayment of rent (specifically, one month's rent plus a late fee) but did not seek an award of overdue rent. The defendant filed a counterclaim (1) asserting that the parties had orally modified the rental agreement to soften the late-fee provision (*Sanders*, 54 Ill. 2d at 479-80), and (2) challenging as unconstitutional the plaintiff's policy that it would make a downward adjustment in rent only if the tenant's income decreased by 25% (*Peoria Housing Authority v. Sanders*, 2 Ill. App. 3d 610, 617 (1971) (Stouder, J., dissenting)).[5] The counterclaim "prayed that defendant's rent be recomputed and that she be allowed as damages any overcharge that might have been made." *Sanders*, 54 Ill. 2d at 480. The court reversed the trial court's dismissal of the counterclaim, reasoning that the defendant was permitted to dispute whether and in what amount rent was due, and even to counterclaim for recoupment of rent. *Id.* at 483.

¶ 22    There have been several appellate decisions applying the holdings of *Jack Spring* and *Sanders*. In *Richardson v. Wilson*, 46 Ill. App. 3d 622, 623 (1977), the defendant "admitted that rent had not been paid for 2 months but advanced affirmative defenses that plaintiff had breached implied and express warranties by failing to repair the premises to comply with the municipal building code and by failing to comply with an express covenant to repair." The appellate court reversed the trial court's dismissal of the affirmative defenses. The court explained:

> "Under these circumstances, although possession is the only issue in this appeal because the landlord is not seeking a judgment for unpaid rent, the resolution of the demand for possession turns upon whether rent was due and unpaid. If rent is due and the

---

[4]About 10 years later, the court extended the warranty to leases of single-family residences, on the ground that "[a] tenant will legitimately have the same expectations that a single-family dwelling will be fit to live in as he would have in the case of a structure with multiple dwelling units." *Pole Realty Co. v. Sorrells*, 84 Ill. 2d 178, 182 (1981).

[5]Only Justice Stouder's dissent in the appellate court revealed the nature of the counterclaim regarding the plaintiff's rent reduction policy.

tenant has not paid after proper notice, the landlord is entitled to possession. If rent is not owed because the tenant's setoffs based on alleged violations of the landlord's breach of an implied warranty of habitability or his express covenant to repair exceed the amount of rent the landlord claims to be owing, plaintiff is not entitled to possession solely by reason of nonpayment of rent." *Id.* at 624.

¶ 23      In *Quel v. Hansen*, 126 Ill. App. 3d 1086, 1088-89 (1984), the appellate court held that the defendant was entitled to assert the defense that he was due rent credits for management and caretaking services as provided in the lease agreement.

¶ 24      The foregoing cases show that, where possession is sought under the Forcible Entry Act for nonpayment of rent, the tenant may challenge the amount of rent or late fees claimed, and may do so by asserting, *e.g.*, (1) that the lease did not actually call for rent or late fees in the amount claimed (*Sanders*), (2) that the rent charged was unconstitutional or otherwise illegal (*Sanders*), or (3) that a setoff was due because of a provision in the lease for rent credits (*Quel*) or because the landlord breached an express or implied duty to repair (*Richardson*). Any of these bases may also be alleged as part of a claim for recoupment of rent.

¶ 25      The principles of these cases apply equally to actions under the Forcible Entry Act in which the board of managers of a condominium property seeks possession of a condominium unit because of the owner's nonpayment of assessments. As the court in *Jack Spring* explained, it was once understood that land was the principal focus of the leasehold, and tenants were expected to make their own repairs to the dwelling (*Jack Spring*, 50 Ill. 2d at 363-66). With the fundamental shift in the economic structure, it became understood that rent was paid in exchange for the landlord's promise to maintain the property in a liveable condition. However, there is no need to rely on such assumptions to determine the purpose for the assessments collected by plaintiff's board of managers, or by condominium boards of managers generally. Section 18.4 of the Condominium Property Act (Condominium Act) (765 ILCS 605/18.4 (West 2010)) prescribes duties for boards of managers that are implied in all condominium governance documents in Illinois. See 765 ILCS 605/18.4(r) (West 2010) ("[a]ny portion of a condominium instrument which contains provisions contrary to these provisions shall be void as against public policy and ineffective," and "[a]ny such instrument that fails to contain the provisions required by this Section shall be deemed to incorporate such provisions by operation of law"). Among these is the duty "[t]o provide for the operation, care, upkeep, maintenance, replacement and improvement of the common elements" (765 ILCS 605/18.4(a) (West 2010)), which duty may be carried out by the collection of assessments from unit owners (765 ILCS 605/18.4(c), (d) (West 2010)). Consistent with section 18.4(a), article XIII of the Declaration provides that "[m]aintenance, repair, and replacements of the Common Elements shall be furnished by [plaintiff's board] as part of the common expenses." Article VIII of the Declaration provides that unit owners shall pay their proportionate share of the common expenses. Article VI of the Bylaws authorizes plaintiff to collect monthly assessments for the common expenses.

¶ 26      It is unquestioned, and unquestionable, in this appeal that the assessments collected by plaintiff are for the maintenance of the common elements, and that the roof and the brick facade of the building–the two exterior areas that defendant claims were neglected–are among the common elements. We conclude that defendant's assertion that plaintiff has not

performed its duties with respect to the common elements is as viable a defense to plaintiff's suit under the Forcible Entry Act as a landlord's failure to maintain a rented dwelling would be to a suit under the Forcible Entry Act for possession of that dwelling for nonpayment of rent.[6]

¶ 27        Plaintiff points to section 18.4(d) of the Condominium Act, which empowers a board of managers to "collect assessments from unit owners" as part of the board's "powers and duties" (735 ILCS 605/18.4(d) (West 2010)). Plaintiff suggests that a board's right to collect assessments is absolute and that a claim for nonpayment of assessments is not subject to any affirmative defense. Certainly, the Forcible Entry Act does provide a remedy for nonpayment of assessments, implying that the collection of assessments is not only a power and a duty but a right as well, but nowhere does the Forcible Entry Act or the Condominium Act suggest that the right is absolute. Notably, the board's power and duty to maintain the common elements–and the concomitant right of the unit owner to have the common elements maintained–are just as unequivocally affirmed in section 18.4 of the Condominium Act as the board's power and duty to collect assessments. Thus, the Condominium Act appears to set the rights of unit owners on par with the rights of the board of managers. Moreover, the rights arise from mutually exchanged promises–on the one hand to pay assessments, on the other hand to maintain the common elements–and so the Declaration and the Bylaws are best seen as contracts. See *La Salle National Bank v. Vega*, 167 Ill. App. 3d 154, 159 (1988) (a contract is an agreement between competent parties, on a consideration sufficient in law, to do or not to do a particular thing); *1230-1250 Twenty-Third Street Condominium Unit Owners Ass'n v. Bolandz*, 978 A.2d 1188, 1191 (D.C. 2009) ("A condominium instrument, such as the bylaws, is a contract between the unit owners and the condominium association."); 1 Gary A. Poliakoff, Law of Condominium Operations § 1:23 (2011) (while sometimes referred to as a constitution, a condominium governance document is "more accurately described as a contract between the unit owner and the association, promising that in exchange for the unit owner's payment of assessments, the association will maintain the property and enforce the other covenants within the documents"). Notably, plaintiff entitled count II of its complaint "Breach of Contract." We do not suggest, however, that count II actually alleged common-law breach of contract, as it incorporated most of count I, did not cite any law other than the Forcible Entry Act, and did not set forth any elements of breach of contract.[7] Plaintiff's choice of a title for count II is, nonetheless, suggestive of how it

---

[6]We acknowledge a potential distinction in this case between the two types of assessments that plaintiff claims are overdue. The monthly assessments, it seems, are those that defendant claims should have gone toward the repair of the roof and the brick facade. The special assessments were specifically allocated to a different purpose. Potentially, then, neglect of the roof and the brick facade would not itself be a ground for withholding the special assessments. As plaintiff, however, does not argue along these lines, we will not discriminate between the two types of assessments in deciding what defenses or counterclaims defendant may bring in this suit under the Forcible Entry Act for possession due to nonpayment of assessments.

[7]If count II was a *bona fide* breach-of-contract count, then plaintiff would have been hard pressed to claim that defendant could not argue that plaintiff itself breached the contract sued on.

viewed the character of the documents sued on.

¶ 28 Based on the foregoing, we hold that, where a condominium board of managers sues for possession of a unit because of delinquent assessments, and the condominium instrument indicates (as presumably most do) that the unit owner's promise to pay assessments is in exchange for the board of managers' promise to use those assessments for the repair and maintenance of the condominium property, the unit owner may claim, as a justification for nonpayment of assessments, that the board of managers breached its duty of repair and maintenance. Standard principles of contract law apply in determining whether the breach of the duty to repair and maintain is substantial enough to warrant nonpayment of assessments. A party to a contract is entitled to suspend her performance if the other party has materially breached the contract. *Watson v. Auburn Iron Works, Inc.*, 23 Ill. App. 3d 265, 269 (1974); Restatement (Second) of Contracts § 242 cmt. a (1981). "The test of whether a breach is material is whether it is 'so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement.' " *InsureOne Independent Insurance Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, ¶ 43 (quoting *Village of Fox Lake v. Aetna Casualty & Surety Co.*, 178 Ill. App. 3d 887, 900-01 (1989)); see also *Trapkus v. Edstrom's, Inc.*, 140 Ill. App. 3d 720, 725 (1986) (test of materiality is "whether or not the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it"). The materiality of a breach is a question of fact. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006).

¶ 29 Thus far we have determined that a board of managers' breach of its duty to repair and maintain the common elements may, depending on the circumstances, justify a unit owner in suspending her payment of assessments and, hence, that the failure to repair and maintain may be germane to a FED action for possession based on nonpayment of assessments. We further determine that the particular failure to repair and maintain alleged by defendant here is germane to plaintiff's action for possession. Defendant has alleged that plaintiff's neglect of the building's roof and brick facade has caused water leakage and, consequently, substantial damage to the interior of her unit, and that plaintiff has refused repeated requests to repair the damage and the cause of the leak.

¶ 30 We caution that not every lapse by a board of managers in its repair and maintenance duties will justify a unit owner in suspending payment of assessments. Without making any definitive remarks on factual scenarios not before us, since that is not our place here, we note that, for example, overgrown bushes and unrepaired sidewalk cracks may rarely constitute a material breach. The lapse alleged here, however, is in a different category altogether, as it affects the basic comfort of the dwelling. A sound roof and exterior walls are perhaps the most fundamental expectations of those who purchase condominium units and expend considerable sums each year for "maintenance-free" living. *Jack Spring* extended legal protection to the same kind of expectations as those held by tenants.

¶ 31 The remainder of our analysis concerns the nature of the relief that defendant may seek in this action. She seeks recompense for damage to her own property, both as a setoff from any assessments due and as a basis for an affirmative plea for damages. We review the case

-10-

law that has attempted to articulate the relief a defendant in a FED action may seek. In *Sawyier*, 198 Ill. App. 3d at 1054, the court gave the following categorization of available defenses:

> "The types of claims which Illinois courts have found to be germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession [citation]; (2) claims denying the breach of any agreement vesting possession in plaintiff [citation]; (3) claims questioning the validity or enforceability of the document upon which plaintiff's right to possession is based [citation]; and (4) claims questioning a plaintiff's motivation for the bringing of the forcible action [citation]."

¶ 32 Defendant's affirmative defenses and counterclaim would qualify as germane, if at all, under category (2); defendant neither asserts a paramount right of possession, questions the validity or enforceability of the condominium documents, nor questions plaintiff's impetus for bringing this action. Once again, we analyze the cases on rented dwellings to determine what kind of relief the owner of a condominium unit may seek as a defendant in a FED action.

¶ 33 Statements in some of the cases on rented dwellings suggest that a defendant in a FED action may never bring a counterclaim for damages: (1) "Counterclaims seeking money damages are not germane to forcible entry claims" (*American National Bank v. Powell*, 293 Ill. App. 3d 1033, 1044 (1998)); and (2) "[N]o cross-demand in the nature of recoupment can be interposed by way of defense [in a FED action]" (*Sauvage v. Oscar W. Hedstrom Corp.*, 322 Ill. App. 427, 430 (1944)). A more accurate statement is: "Where a [defendant's] claim seeks damages *and not* possession, it is not germane to the distinct purposes of the forcible entry and detainer proceeding." (Emphasis added.) *Sawyier*, 198 Ill. App. 3d at 1053. Damages sought by the defendant must be tied to the issue of possession. The first corollary to this principle is that, where possession is not contested, the defendant may not seek damages at all. For example, in *Sawyier*, the defendant sold property to the plaintiffs with the written understanding that the defendant could live rent-free in the coach house for the rest of his life. Several months later, the plaintiffs filed an action under the Forcible Entry Act, claiming that they were entitled to possession of the coach house. The complaint was silent as to the basis for the claim of possession. The defendant filed a combined answer and counterclaim, in which he admitted that the plaintiffs were entitled to possession of the main house on the property but did not address their claimed entitlement to possession of the coach house. In the remainder of his answer and counterclaim, the defendant (1) "den[ied] that he wrongfully possessed the coach house, alleging that he had vacated the house because of certain wrongful acts of plaintiffs," and (2) "alleged that plaintiffs had breached the real estate contract and committed various torts." *Id.* at 1049.

¶ 34 The appellate court held that the combined answer and counterclaim were not germane to the proceeding:

> "Although defendant claims to be seeking a determination of his right to possession of the coach house, he, in effect, conceded the issue of possession when, in his answer, he stated that he had vacated the coach house and no longer claimed any interest in it. Thus, the issue of possession was not even involved in the proceeding. Additionally, although

he now claims that the damages sought in his counterclaim include the equivalent of unpaid rent, it is clear from his pleading that he is seeking only monetary damages, including damages measured by the value of rent-free use of the coach house for the remainder of his life, for the alleged breach of the real estate contract and misrepresentation of plaintiffs. Where a claim seeks damages and not possession, it is not germane to the distinct purposes of the forcible entry and detainer proceeding. [Citations.]

    \*\*\*

    \*\*\* As a result of defendant's pleadings, possession is not in issue in this case. His claim only seeks monetary damages for plaintiffs' alleged breach of the real estate contract and the various torts. Where a claim essentially involves damages and not possession, it is not germane to forcible actions." *Id.* at 1053-54.

See also *Reid v. Arceneaux*, 63 Ill. App. 2d 113, 116 (1965) (no error in striking of counterclaim that did not question the plaintiff's right to possession but claimed fraud and misrepresentation in the inducement of the agreement).

¶ 35    The second corollary is that, where possession *is* contested, the defendant may claim damages, but restrictedly. In any case where possession is sought on the basis of delinquent rent, it is legally permissible for the defendant not only to deny liability for rent, but also to seek recoupment of overpaid rent. For instance, the supreme court in *Sanders* allowed the defendant to claim not only that she owed no rent, but also that she actually overpaid and should be reimbursed. *Sanders*, 54 Ill. 2d at 480. The defendant asserted that the overpayment would be established once it was proved that the parties orally modified the contract to mitigate the late-fee provision and that the plaintiff's policy on rent reduction due to diminished income was too restrictive. *Id.*

¶ 36    The counterclaim in *Sanders* was representative of *Sawyier*'s category (2), *i.e.*, of a "claim[ ] denying the breach of any agreement vesting possession in plaintiff" (*Sawyier*, 198 Ill. App. 3d at 1054). The counterclaim was ultimately premised on the contention that the rental agreement (at least, as orally modified and also as adjusted to conform with the law) did not permit the plaintiff to charge what it did, and hence that the defendant did not breach the agreement.

¶ 37    Another defense available under the case law is to concede the validity of the amounts stated on the face of the rental agreement but claim that, due to an extrinsic consideration, less or no rent is in fact owed. For instance, in *People ex rel. Department of Transportation v. Walliser*, 258 Ill. App. 3d 782 (1994), the Illinois Department of Transportation (IDOT) brought a FED action against the former owner of a home that was to be demolished to make space for state roads. The defendant had sold his property to IDOT and signed a one-year lease to remain in the home as a tenant. Eventually, the defendant ceased paying rent, and IDOT sued for possession. *Id.* at 784-85. The appellate court affirmed the trial court's decision barring the defendant from arguing at trial that IDOT improperly denied him relocation benefits. The appellate court determined that the claim was "for monetary relief" and therefore not germane. *Id.* at 788. However, the appellate court proceeded to reverse the lower court's decision barring the defendant from arguing at trial that he was allowed by

-12-

administrative regulations to instruct IDOT to deduct his rent from his relocation benefits. Citing *Jack Spring*, the court noted that "[w]here a [FED action] is brought for nonpayment of rent, the question of whether rent is due and owing is the crucial issue." *Id.* at 789 (citing *Jack Spring*, 50 Ill. 2d at 359). The court held that "the question of whether IDOT was required to deduct [the defendant's] rent payments from the benefits that [he] might be eligible to receive from the IDOT was a germane defense." *Id.*

¶ 38    Thus, in *Walliser*, the defendant cited specific authority that he claimed would demonstrate that, though the rental agreement validly called for rent in the amount specified, he was liable for less or no rent because the amount should have been deducted from the relocation benefits to which he was entitled under federal law.

¶ 39    *Walliser* appears to be a strict application of the rule restricting the defenses and counterclaims available to a defendant in a FED action. Considered in isolation, the defendant's claim that IDOT should have awarded him relocation benefits was simply a claim for monetary relief, but, when coupled with the citation to the administrative regulations allowing IDOT to deduct from relocation benefits any rent that a displaced person owes to IDOT, it became germane to the issue of whether rent was due.

¶ 40    *Sauvage* and *Miller v. Daley*, 131 Ill. App. 3d 959 (1985), enforce, like the first part of the *Walliser* analysis, the default rule that the defendant-tenant in a FED action may not seek damages other than overpaid rent. In *Miller*, the plaintiff brought suit against the road commissioner of Canton Township. The plaintiff alleged that, during the pendency of a previous FED action against the plaintiff to dispossess him of an apartment he was leasing from the township, the defendant locked the plaintiff out of the only available restroom on the premises. The plaintiff requested in the second action an award of damages for the property damage and mental distress he claimed the defendant caused during the FED action. The defendant argued that the present claim was barred because the plaintiff could have brought it in the FED action. The appellate court disagreed, holding that the present claim was "not related to the question of which party is entitled to rightful possession" and therefore would not have been appropriate in the FED action. *Id.* at 961; see also *Munden v. Hazelrigg*, 711 P.2d 295, 298 (Wash. 1985) (a defense or counterclaim in a FED suit for possession premised on unpaid rent must be based on facts that would excuse the tenant's breach; thus, in action for possession for nonpayment of rent, the defendants could not properly assert a counterclaim for damage to their vehicle from a rockslide on the plaintiff's property).

¶ 41    In *Sauvage*, the plaintiffs brought a FED action for possession of a rented dwelling based on the defendant's failure to pay rent for March 1943. The defendant did not dispute that it failed to pay rent for that month, yet it still denied any breach of contract. Specifically, the defendant argued that the rent it owed for March 1943 was exceeded by the compensation that the plaintiffs owed the defendant for heating a portion of the premises that was not included in the lease and that the defendant did not occupy. The trial court refused to take evidence on the counterclaim. *Sauvage*, 322 Ill. App. at 428-30. Affirming, the appellate court reasoned:

    "The lease makes no provision whatsoever for heating the garage in the rear of the

premises, which was expressly excepted [in the lease]. If defendant heated the garage it was purely gratuitous, and if entitled to any compensation for that service, such claim would be entirely outside the provisions of the lease and the subject matter of another suit. *Plaintiffs did not join in their demand for possession any request for a judgment for March rent, and no such judgment was entered.*" (Emphasis added.) *Id.* at 430.

The emphasized portion of the discussion rests on a point that is no longer valid. After *Sanders*, a tenant-defendant in a FED action may claim as a defense that no rent is owed, even if the landlord-plaintiff does not seek a money judgment for the rent it claims is delinquent. See *Sanders*, 54 Ill. 2d at 483. *Sauvage*'s remaining analysis is, however, sound.

¶ 42    Some decisions appear to recognize an exception to the default rule that the defendant-tenant in a FED action may claim no damages other than overpaid rent. The landlord in *Powell* filed a FED action, and the tenant asserted an affirmative defense and counterclaim, both pursuant to the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991)). The affirmative defense alleged that the FED action was retaliatory, and the counterclaim sought damages as permitted by the RLTO, namely, "an amount equal to and not more than two months' rent or twice the damages sustained *** and reasonable attorneys' fees." *Id.* The appellate court reversed the trial court's order striking and dismissing the RLTO affirmative defense and counterclaim. The court first noted that "[a] retaliatory eviction claim is germane to a forcible entry action and states a defense." *Powell*, 293 Ill. App. 3d at 1044. On the applicability of the RLTO, the court cited *Oak Park Trust & Savings Bank v. Village of Mount Prospect*, 181 Ill. App. 3d 10, 23-24 (1989), where the court upheld the constitutionality of a Mount Prospect ordinance permitting the defendant-tenant in a FED action to counterclaim for any amounts owed him under the rental agreement. The *Oak Park Trust* court held that the ordinance neither contravened the Forcible Entry Act nor abrogated the autonomy of the courts:

"Presumably, any matter arising under the rental agreement or the [ordinance] would be germane to the issue of whether the landlord is entitled to possession or rent. Further, if a court found that the matter raised by the tenant in his counterclaim was not germane to the forcible entry and detainer action, nothing in the [o]rdinance prevents a court from striking the counterclaim.

Furthermore, the mere fact that an ordinance defines notice procedures, the duties of the parties, and the remedies available to the parties does not interfere with the court system. Our courts are often requested to enforce or interpret municipal ordinances." *Id.* at 23.

¶ 43    *Powell* held, on the basis of *Oak Park Trust*, that the Chicago ordinance was applicable. *Powell*, 293 Ill. App. 3d at 1045. The court further stated that it saw "no good reason to allow [the defendant] to argue retaliatory eviction under the RLTO, but not to allow him to pursue remedies specifically provided in the RLTO." *Id.*

¶ 44    The *Powell* court clearly erred, however, in affirming the dismissal of the defendant's counterclaim seeking a "refund of overpaid rent for [the plaintiff's] breach of the implied warranty of habitability." *Id.* at 1037. The court held that the implied-warranty counterclaim was not germane "because it [sought] money damages independent of the RLTO." In

-14-

*Sanders*, however, the supreme court permitted a claim for recoupment of rent that was not based on an ordinance or other enactment. *Powell* seems to run squarely contrary to this holding.

¶ 45    *Powell* suggests that courts will recognize a claim for damages in addition to recoupment of rent if there is an applicable legal provision authorizing it.

¶ 46    Based on the foregoing authorities, we can separate what is legally proper in defendant's affirmative defenses and counterclaim from what is not. We held above that, just as the contract principle of mutually exchanged promises can justify a tenant's refusal to pay rent, so that principle can justify a condominium unit owner's refusal to pay assessments that the board of managers collects to fund its services. We determined above that the Condominium Act, the Declaration, and the Bylaws together establish here a duty of repair and maintenance of the common elements, the funds for which are provided through the mandatory assessments paid by unit owners. We further held that, because the Condominium Act, the Declaration, and the Bylaws indicate that the promise to pay assessments was exchanged for the promise to repair and maintain the common elements, it is permissible for defendant to claim neglect of the common elements as an offset to, or even nullification of, plaintiff's claim for assessments.

¶ 47    The damage to defendant's unit, her own property, does not have the same relevance. The fact of damage to the unit might, we acknowledge, be probative to the factual question of whether the common elements were damaged or in disrepair and, to that extent, would be probative to whether there was a breach of the duty to repair and maintain the common elements. For instance, moisture in the drywall could tend to factually establish that the roof is leaking. We stress, however, that damage to the unit will have no relevance to the issue of possession other than by serving as a factual predicate for the conclusion that there was a breach. The reason, simply, is that assessments are paid in exchange for repair and maintenance of the common elements, not of the units themselves. If plaintiff has any duty with respect to the units themselves, it does not lie in the promise(s) in exchange for which defendant and other unit owners pay assessments. Moreover, defendant points to no other ground in the Condominium Act, the Bylaws, or the Declaration for a duty respecting the units themselves. Even if there were such a duty, defendant would also have to establish that its breach would justify her in withholding assessments.

¶ 48    Since defendant's promise to pay assessments was not exchanged for any promise regarding her unit itself, the fact of damage to her unit does not in itself provide a legal justification for withholding assessments. If defendant has any ground for withholding assessments, or now counterclaiming for monetary relief, because of damage to her unit, it would have to lie elsewhere than in the Condominium Act, the Bylaws, or the Declaration. Defendant, however, cites no extrinsic authority such as the ordinances in *Oak Park Trust* and *Powell* or the administrative regulations in *Walliser*. Therefore, like the tort claims in *Miller* and the claim for unpaid compensation in *Sauvage*, defendant's counterclaim and request for a setoff, grounded as both are in alleged damage to her unit, are not germane to the issue of possession as framed in this case. Since the counterclaim seeks nothing but monetary relief for damage to defendant's unit, it was properly severed in its entirety. However, the affirmatives defenses are based partly on breach of the duty to maintain and

repair the common elements, and partly on the resulting damage to defendant's unit (notably, the failure to repair the toilet has no apparent relation to any alleged breach of the duty as to the common elements). Accordingly, we vacate the judgment of the trial court and remand for partial reinstatement of the affirmative defenses. The defenses are to be reinstated such that the only alleged legal ground for withholding assessments is a breach of the duty to repair and maintain the common elements. The allegation that there is damage to defendant's unit due to disrepair of the building's exterior is reinstated, but only as a factual predicate, not as a ground in itself for withholding assessments. The allegation that plaintiff has failed to repair the toilet is not to be reinstated at all in the affirmative defenses, as it bears no probative value in establishing a breach of the duty to repair and maintain the common elements.[8]

¶ 49       Given this resolution, we do not address plaintiff's or defendant's various claims of error as to the relief awarded at trial. Also, since plaintiff has not substantially prevailed on appeal, we reject its request for costs and attorney fees on appeal.

¶ 50       We proceed to plaintiff's petition for rehearing (PFR). The general tenor of the PFR is urgency and astonishment. For 14 pages (the lengths of the PFR and supporting reply combined), plaintiff energetically assails our decision as being not only legally incorrect, but also woefully misguided as policy. Plaintiff suggests that our reasoning creates a "Catch 22," is susceptible to a *reductio ad absurdum*, and opens a "Pandora's Box." We do not begrudge plaintiff such intensity, but would have appreciated it if such animation and substance were on display in plaintiff's first pass on the issue. Where plaintiff now devotes 14 pages to the issue, it previously devoted only 3. In those three pages, plaintiff spent one short paragraph arguing that a unit owner has an unconditional duty to pay assessments. Plaintiff's sole authority was section 18.4(d) of the Condominium Act, which states that the "powers and duties" of a condominium association's board of managers include the right "[t]o collect assessments from unit owners." 765 ILCS 605/18.4(d) (West 2010). Now plaintiff adds several other authorities that it could have cited previously. Additionally, where plaintiff made no policy arguments before, it now discourses for several pages on the upheaval it predicts our decision will bring to condominium life. Back-loading of appellate arguments does not serve judicial efficiency. For this reason, Illinois Supreme Court Rule 341(h)(7) (Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008)) provides that "[p]oints not argued" in the initial brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."[9] While we could rightly deem these new points forfeited, we will consider them in the interest of rendering a more informed decision. See *Halpin v. Schultz*, 234 Ill. 2d 381,

---

[8]Again, plaintiff does not claim that defendant is on different footing with the monthly assessments than with the special assessments. Plaintiff does not, that is, claim that its neglect of the roof and the brick facade cannot be a justification for nonpayment of the special assessments because the latter were allocated for areas of the common elements other than the roof and the brick facade.

[9]Tellingly, when plaintiff refers to its prior policy arguments, it directs us to its oral argument, not to its appellee's brief. Arguments raised for the first time at oral argument are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

390 (2009) (the rule of waiver "is an admonition to the parties rather than a limitation on a court of review," which "may look beyond considerations of waiver in order to maintain a sound and uniform body of precedent or where the interests of justice so require").

¶ 51 We begin with additional statutory provisions that plaintiff cites. Plaintiff directs us to sections 18(o) and 18(q) of the Condominium Act, which provide:

"Contents of bylaws. The bylaws shall provide for at least the following:

* * *

(o) The association shall have no authority to forbear the payment of assessments by any unit owner.

***

(q) That a unit owner may not assign, delegate, transfer, surrender, or avoid the duties, responsibilities, and liabilities of a unit owner under this Act, the condominium instruments, or the rules and regulations of the Association; and that such an attempted assignment, delegation, transfer, surrender, or avoidance shall be deemed void.

The provisions of this Section are applicable to all condominium instruments recorded under this Act. Any portion of a condominium instrument which contains provisions contrary to these provisions shall be void as against public policy and ineffective. Any such instrument which fails to contain the provisions required by this Section shall be deemed to incorporate such provisions by operation of law." 765 ILCS 605/18(o), (q) (West 2010).

¶ 52 Neither section 18(o) nor section 18(q) persuades us that the Condominium Act grants boards of managers the absolute right to collect assessments. Section 18(o) reinforces that a board of managers has a duty to collect assessments from *all* unit owners. Duty implies right, but not necessarily absolute right. That a unit owner may not be exempted from assessments by executive grace of the board of managers does not entail that the unit owner owes assessments in all circumstances.

¶ 53 As for section 18(q), plaintiff relies specifically on the terms "avoid" and "avoidance." Plaintiff contends that, if a unit owner cannot "avoid" responsibility for paying assessments, it must be because the duty to pay assessments is absolute. Plaintiff misconstrues the language. Section 18(q) does not purport to fix as absolute the duty to pay assessments but, rather, invalidates actions by which the unit owner might evade responsibility for paying assessments.

¶ 54 We begin with section 18(q)'s first four terms: "assign," "delegate," "transfer," and "surrender." None of them is defined in the Condominium Act. When a statute does not define a term, courts may resort to dictionaries in order to ascertain the plain and ordinary meaning of the term. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 60. Black's Law Dictionary defines all four of these terms. "Assignment" is defined as "[t]he transfer of rights or property." Black's Law Dictionary 115 (7th ed. 1999). "Delegation" is defined as "[t]he act of entrusting another with authority or empowering another to act as an agent or representative." *Id.* at 438. "Transfer" has the following definitions:

"1. Any mode of disposing of or parting with an asset or an interest in an asset, including the payment of money, release, lease, or creation of a lien or other encumbrance. ● The term embraces every method–direct or indirect, absolute or conditional, voluntary or involuntary–of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption. 2. Negotiation of an instrument according to the forms of law. ● The four methods of transfer are by indorsement, by delivery, by assignment, and by operation of law. 3. A conveyance of property or title from one person to another." *Id.* at 1503.

Finally, "surrender" has these definitions:

"1. The act of yielding to another's power or control. 2. The giving up of a right or claim; RELEASE (1). 3. The return of an estate to the person who has the reversion or remainder, so as to merge the estate into a larger estate. 4. *Commercial law.* The delivery of an instrument so that the delivery releases the deliverer from all liability. 5. A tenant's relinquishment of possession before the lease has expired, allowing the landlord to take possession and treat the lease as terminated." *Id.* at 1458.

¶ 55    "Assign," "delegate," "transfer," and "surrender" are all *actions* of purported legal significance. In their essence, they denote a transfer or relinquishment of "the duties, responsibilities, and liabilities of a unit owner under [the Condominium Act]." 765 ILCS 605/18(q) (West 2010). Unlike these well-established legal terms of art, "avoid" is broader in scope, yet nonetheless denotes action. Black's Law Dictionary defines "avoidance" as "[t]he act of evading or escaping < avoidance of tax liability >." Black's Law Dictionary 132 (7th ed. 1999). While perhaps other definitions of "avoid" are broader and not specifically action-oriented, the canon of statutory construction known as *ejusdem generis* would still compel us to conclude that the legislature intended a meaning of "avoid" that, consistent with the preceding terms in the series, is action-oriented. See *People v. Rutledge*, 104 Ill. 2d 394, 397 (1984) ("It is a well[-]settled rule of construction that where general words follow particular and specific words in a statute[,] the general words must be construed to include only things of the same kind as those indicated by the particular and specific words." (Internal quotation marks omitted.)).

¶ 56    Plaintiff unwarrantedly attributes indirection and inefficiency of expression to the legislature. If the legislature had wanted to establish as absolute the duty to pay assessments, it could have said so directly rather than declare "void" any attempted "avoidance" of that duty. What the legislature was declaring "void" were actions, namely, attempted transfers or relinquishments of the duty to pay assessments. Here, defendant's ground for refusing to pay assessments is not that she has transferred or relinquished the duty but, rather, that the obligation is suspended because of plaintiff's failure to repair and maintain the common elements.

¶ 57    Plaintiff next cites two Illinois decisions, *Schiro v. W.E. Gould & Co.*, 18 Ill. 2d 538 (1960), and *Beese v. National Bank of Albany Park*, 82 Ill. App. 3d 932 (1980). Plaintiff cites *Schiro* for the proposition that "the law existing at the time and place of the making of [a] contract is deemed a part of the contract, as though expressly referred to or incorporated into it." *Schiro*, 18 Ill. 2d at 544. Plaintiff suggests that, since the "[Condominium Act] does ***

-18-

provide for the absolute right to collection of assessments," and the Condominium Act's provisions on the rights and duties of boards of managers and unit owners are implied in all condominium instruments, then the Bylaws and the Declaration necessarily prescribe an absolute right to collect assessments. We have examined the Condominium Act, including the provisions that plaintiff has untimely cited to us, and we disagree with its interpretation. Plaintiff's citation to *Schiro* simply begs the question of what the Condominium Act provides.

¶ 58    Plaintiff claims that *Beese* undercuts our analogy to landlord-tenant cases. *Beese* claims that "*Jack Spring* did not disturb the conventional principle that the covenant to repair and the covenant to pay rent were mutually exclusive." *Beese*, 82 Ill. App. 3d at 935. This comment, according to plaintiff, directly confutes a premise of our reasoning, which is that a tenant's promise to pay rent is conditioned on the landlord's compliance with both the implied covenant of habitability and any express covenant to repair and maintain the premises. We clarify that the landlord-tenant cases do not, of course, control the issue of whether the obligation of defendant–a condominium unit owner, not a tenant–to pay condominium assessments is independent of the board of managers' duty to repair and maintain the common elements. The landlord-tenant cases are persuasive authority alone. They do, however, figure prominently in our reasoning, and so we emphasize that *Beese* is, simply, mistaken about *Jack Spring*. Interestingly, plaintiff seems to have overlooked that *Jack Spring* itself made a similar comment at the conclusion of the decision. The court said that its holding "does not alter the long established rule that liability for rent continues so long as the tenant retains possession of the premises" (*Jack Spring*, 50 Ill. 2d at 367). The qualification, however, that *Jack Spring* added to that "long-established rule" is that the tenant-defendant in a FED action may "prove that damages suffered as a result of the breach of [the] warranty [of habitability] equalled or exceeded the rent claimed to be due" (*Lensey Corp. v. Wong*, 83 Ill. App. 3d 207, 209 (1980)). The tenants in *Jack Spring*, *Sanders*, *Richardson*, and other cases withheld rent while remaining in possession of the premises. If, as long as she is in possession of the premises, a tenant owes, without exception, all rent due on the face of the lease, then the tenants in *Jack Spring* and the other cases would not have been permitted to assert, as a defense in a FED action, that the rent obligation was nullified in whole or in part by a breach of the implied covenant of habitability or an express duty to repair and maintain. Obviously, then, even while the tenant is in possession of the premises, the obligation to pay rent is not absolute but, rather, is conditioned on compliance with implied or express duties to repair and maintain.

¶ 59    Finally, we briefly address plaintiff's various policy arguments. Plaintiff invests the most energy and time in predicting that our decision will not, as we intend it, encourage condominium associations to maintain the common elements, but instead will frustrate their efforts. First, plaintiff claims that our holding leaves too much to the unit owner's "perception" of the condition of the common elements. We have clarified above (*supra* ¶¶ 28-29) that our holding cleaves to the common-law rule that a breach must be material before performance may be suspended. Second, plaintiff asserts that the "self-help remedy" (as plaintiff terms it) of withholding assessments based upon the condition of the common elements will only reduce the association's funds and, hence, impair its ability to repair the

-19-

very condition of which the unit owner complains. Relatedly, plaintiff submits that assessments are put toward many expenses aside from repair and maintenance, such as taxes, insurance, and employment of personnel.

¶ 60   Similar concerns, however, apply to the administration of multiunit rentals, yet evidently they did not deter the courts in *Jack Spring* and its progeny. The implied warranty of habitability extends to the common areas of multiunit rentals. See *Jarrell v. Hartman*, 48 Ill. App. 3d 985, 987 (1977) ("Building code violations in the common areas of a multiunit dwelling may be as dangerous or uncomfortable to the tenants as defective conditions within their respective apartments. The public policy considerations that permit of a cause of action are not so fractured as to allow for a cause of action for a substantial defect in an apartment and deny any remedy for defects in halls or stairs leading to the apartment." (Emphases omitted.)). Certainly, the withholding of rent by one or more tenants might jeopardize a landlord's ability to maintain those common elements, but, nonetheless, the "self-help remedy" of withholding rent has been validated by *Jack Spring*. Landlords also draw from the common pool of rental income to pay insurance and taxes and to employ personnel, but again, in *Jack Spring*, this consideration obviously yielded to the interests of tenants.

¶ 61   Plaintiff predicts a crippling of condominium associations, but we question how well a condominium association is currently functioning if one of its unit owners suffers such neglect as defendant has alleged. We also note that plaintiff hardly arouses sympathy for its cause in commenting that defendant's concern to have the roof and the brick facade repaired "is actually adversely impacted by the self-help she has advocated." Plaintiff invites the question of why it did not address the source(s) of the leaks before defendant instituted her "self-help."

¶ 62   Third, plaintiff suggests that the remedy of withholding assessments is unnecessary because unit owners have an existing remedy, namely a suit against the board of managers for breach of fiduciary duty. See 765 ILCS 605/18.4 (West 2010) ("In the performance of their duties, the officers and members of the board, whether appointed by the developer or elected by the unit owners, shall exercise the care required of a fiduciary of the unit owners."). That the same right can be vindicated by more than one avenue is nothing novel in the law. For example, a tenant aggrieved by her landlord's failure to comply with an implied or express mandate to repair and maintain may, *inter alia*, (1) sue for a declaration that rent should be offset, while either paying full rent or, through "self-help," instituting the offset herself; or (2) institute the offset herself and, in the event of a consequent FED action, plead the landlord's breach as a defense. We have determined that the remedy of withholding assessments is well grounded in statutory and decisional law. If another remedy is available, the two may coexist.

¶ 63   Finally, we acknowledge that our decision places us in the small minority of jurisdictions recognizing that a condominium unit owner may claim an offset to assessments based on the association's material breach of its mandated duty to repair and maintain the common elements. See Poliakoff, *supra* § 5.19 (collecting cases). Each court is beholden to its own state's statutory and decisional law, and we have made a decision according to our best interpretation of the particular law that guides us.

¶ 64                                    CONCLUSION

¶ 65        We affirm the judgment of the trial court severing defendant's counterclaim, and we affirm in part and reverse in part the judgment striking defendant's affirmative defenses. We remand for reinstatement of defendant's affirmative defenses and for further proceedings consistent with this opinion.

¶ 66        Affirmed in part and reversed in part; cause remanded.