# Illinois Official Reports

## Supreme Court

---

**Spanish Court Two Condominium Ass'n v. Carlson**, 2014 IL 115342

---

Caption in Supreme Court:

SPANISH COURT TWO CONDOMINIUM ASSOCIATION, Appellant, v. LISA CARLSON, Appellee.

Docket No. 115342

Filed March 20, 2014
Rehearing denied June 19, 2014

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

Where a condominium association brought a forcible entry and detainer action against a unit owner for failure to pay assessments, the affirmative defense of alleged failure to repair and maintain common areas was properly stricken as not germane to that summary statutory proceeding.

Decision Under Review

Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. Michael J. Fusz, Judge, presiding.

Judgment

Appellate court judgment reversed in part.
Circuit court judgment affirmed.

Counsel on
Appeal

Diane J. Silverberg and Nicholas R. Mitchell, of Kovitz Shifrin Nesbit, of Buffalo Grove, for appellant.

Norman J. Lerum, of Chicago, for appellee.

Allan Goldberg, Hal R. Morris and Laura L. Marinelli, of Arnstein & Lehr LLP, of Chicago, for *amicus curiae* Community Associations Institute-Illinois Chapter.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Thomas and Karmeier concurred in the judgment and opinion.
Justice Freeman dissented, with opinion, joined by Justices Kilbride and Burke.
Justices Freeman, Kilbride and Burke dissented upon denial of rehearing, without opinion.

## OPINION

¶ 1    This appeal arises out of a forcible entry and detainer action filed by a condominium association against one of its unit owners based on unpaid assessments. At issue is whether an association's purported failure to repair or maintain the common elements is germane to the proceeding, and thus may be raised by the unit owner in defense of the forcible action. We hold that it is not germane to the forcible proceeding, and thus reverse, in part, the judgment of the appellate court. 2012 IL App (2d) 110473.

¶ 2                                   BACKGROUND

¶ 3    In February 2010, in the circuit court of Lake County, plaintiff, Spanish Court Two Condominium Association (Spanish Court), filed a complaint under the Forcible Entry and Detainer Act (forcible statute) (735 ILCS 5/9-101 *et seq.* (West 2008)) against defendant, Lisa Carlson (Carlson), one of the association's unit owners. Spanish Court alleged that Carlson had failed to pay monthly assessments for the preceding six months, and sought a money judgment and an order of possession. In her answer to the complaint, Carlson admitted that she had not paid her assessments since August 2009. Carlson denied, however, that she owed those assessments, alleging that she incurred water damage to her unit because Spanish Court failed to properly maintain the roof directly above her unit. Carlson also alleged, without providing specifics, that Spanish Court "destroyed property within her unit without justification."

¶ 4    Carlson also asserted two affirmative defenses, entitled "Breach of Covenants" and "Set-Off." In her first affirmative defense, Carlson alleged that Spanish Court failed to maintain the roof and brickwork directly above her unit, resulting in water damage to her unit. Carlson additionally alleged that Spanish Court failed to repair or replace a toilet in her unit that was rendered inoperable during the investigation of a water leak in an adjoining unit. Carlson claimed that such conduct by Spanish Court constituted a breach of its duties set forth in the condominium declaration, and that Spanish Court was estopped as a matter of law from seeking payment for the monthly assessments. In her second affirmative defense, Carlson relied on the same allegations and requested a set-off against any money judgment entered against her on Spanish Court's complaint. Carlson also filed a counterclaim in which she sought money damages based on the same allegations set forth in her affirmative defenses.

¶ 5    Spanish Court moved to strike Carlson's affirmative defenses and to sever her counterclaim, arguing that they were not "germane" to the proceeding, as required by the forcible statute. See 735 ILCS 5/9-106(a) (West 2008). The trial court granted Spanish Court's motion, striking Carlson's affirmative defenses and ordering that Carlson's counterclaim be reassigned to the proper division of the circuit court. Thereafter, the trial court entered an agreed order awarding possession of Carlson's unit to Spanish Court, and a money judgment for unpaid assessments through January 1, 2011. The matter then proceeded to a bench trial as to Spanish Court's claim for unpaid special assessments, accrued assessments not covered in the prior order, late charges, attorney fees, and costs. After disallowing a special assessment and certain attorney fees and costs, the trial court entered its final order again awarding Spanish Court possession, and a money judgment covering all sums due through April 2011.

¶ 6    Carlson appealed, challenging the trial court's order striking her affirmative defenses and severing her counterclaim, as well as the subsequent orders granting Spanish Court possession and a money judgment. Spanish Court cross-appealed, challenging the trial court's disallowance of one of its special assessments.

¶ 7    The appellate court vacated the judgment of the trial court, and remanded the case for partial reinstatement of Carlson's affirmative defenses. 2012 IL App (2d) 110473, ¶ 48. The appellate court held that a unit owner may claim, as a defense to a forcible action based on unpaid assessments, that her responsibility to pay assessments was diminished or nullified by the failure of the association to repair or maintain the common elements. *Id.* ¶¶ 16, 28, 46. The appellate court reasoned that if a tenant could raise, as an affirmative defense in a forcible proceeding, the landlord's failure to maintain the leased premises, a condominium unit owner should also be able to raise as an affirmative defense the association's failure to repair and maintain the common elements. *Id.* ¶¶ 26, 46. The appellate court viewed the obligation to pay assessments, and the obligation to repair and maintain the common elements, as mutually exchanged promises, and concluded that under principles of contract law, a material breach of the repair obligation could warrant nonpayment of assessments. *Id.* ¶¶ 27-28. The appellate court acknowledged that its holding placed Illinois in the small minority of jurisdictions that permit a unit owner to claim an offset to assessments based on a failure to repair and maintain the common elements. *Id.* ¶ 63.

¶ 8    The appellate court also determined that the particular failure to repair and maintain the common elements alleged by Carlson was germane to Spanish Court's action for possession because "it affects the basic comfort of the dwelling." *Id.* ¶¶ 29-30. The appellate court

- 3 -

remanded the matter for reinstatement of those parts of Carlson's affirmative defenses that were based on Spanish Court's alleged failure to repair and maintain the roof and brickwork above her unit, which are common elements, but not those parts of her affirmative defenses based on Spanish Court's alleged failure to repair or replace her toilet, which is not a common element. *Id.* ¶ 48. In light of this disposition, the appellate court declined to consider the parties' various claims of trial error, including Spanish Court's claim raised in its cross-appeal that the trial court erred in disallowing a special assessment. *Id.* ¶ 49.

¶ 9    As to Carlson's counterclaim, the appellate court held that it was not germane to the forcible proceeding because it sought nothing but monetary relief. The appellate court therefore affirmed the trial court's order severing the counterclaim. *Id.* ¶ 48.

¶ 10    We allowed Spanish Court's petition for leave to appeal (Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010)), and allowed the Community Associations Institute-Illinois Chapter to file an *amicus curiae* brief in support of Spanish Court (Ill. S. Ct. R. 345 (eff. Sept. 20, 2010)).

¶ 11                                    ANALYSIS

¶ 12    The only issue before this court is whether an association's purported failure to repair or maintain the common elements is germane to a forcible entry and detainer proceeding against a unit owner based on unpaid assessments, and thus may be raised by the unit owner in defense of the forcible action.[1] Spanish Court argues that a unit owner's obligation to pay assessments is independent of the association's obligation to maintain and repair the common elements and, thus, a unit owner's claim that the association failed to fulfill its obligation is not germane to a forcible action based on unpaid assessments. In line with the appellate court judgment, Carlson counters that a unit owner's obligation to pay assessments and the association's obligation to repair and maintain the common elements are personal contractual obligations, and that if the association does not perform, it cannot demand performance from her.

¶ 13    Our review of the parties' arguments and resolution of the legal issue before us require consideration of various provisions of the forcible statute, codified in article IX of our Code of Civil Procedure (735 ILCS 5/9-101 *et seq.* (West 2008)), as well as various provisions of the Condominium Property Act (Condominium Act) (765 ILCS 605/1 *et seq.* (West 2008)). Accordingly, our review proceeds *de novo. Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 454 (2002).

¶ 14    Section 9-102 of the forcible statute expressly provides that a forcible entry and detainer action may be maintained against a unit owner who "fails or refuses to pay when due his or her proportionate share of the common expenses ***, or of any other expenses lawfully agreed upon," subject to proper notice by the association's board of managers. 735 ILCS 5/9-102(a)(7) (West 2008). The Condominium Act contains a comparable provision authorizing an association's board of managers to maintain a forcible entry and detainer action

---

[1]Spanish Court has not pursued its challenge, raised below, to the trial court's order disallowing a special assessment, nor has Spanish Court requested a remand to the appellate court to resolve that issue. Carlson has not challenged, by way of cross-appeal, that part of the appellate court judgment affirming the trial court's order severing her counterclaim and, like Spanish Court, has not requested a remand to the appellate court to consider trial court errors raised in the appellate court but not considered.

against a unit owner who defaults in the performance of his or her obligations under the Condominium Act, or under the condominium declaration or bylaws, or under the association's rules and regulations. 765 ILCS 605/9.2(a) (West 2008).

¶ 15 Notably, the forcible statute limits the matters which may be raised in a forcible action to "germane" matters. Section 9-106 states: "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/9-106 (West 2008). Historically, the "distinctive purpose" of a forcible proceeding was to gain possession of property unlawfully withheld. *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 357-58 (1972). With respect to leaseholds, the legislature expanded the purpose of the proceeding by providing that "a claim for rent may be joined in the complaint, and judgment may be entered for the amount of rent found due." 735 ILCS 5/9-106 (West 2008); *Jack Spring*, 50 Ill. 2d at 358. When the legislature added condominium property to the reach of the forcible statute, the legislature likewise provided that when the action is based upon the failure of a unit owner to pay his or her share of the common expenses, or of any other expenses lawfully agreed upon, the association may obtain a judgment for both possession and the unpaid expenses found due by the court. 735 ILCS 5/9-111(a) (West 2008).

¶ 16 Although the distinctive purpose of a forcible proceeding has changed to the extent that, in some circumstances, an order of possession may be coupled with a money judgment, whether a matter is "germane" is yet closely tied to the plaintiff's claim for possession. For example, in *Rosewood Corp. v. Fisher*, 46 Ill. 2d 249, 257 (1970), where the plaintiffs' forcible action was based upon the defendants' failure to make payments pursuant to a residential installment contract, we held that "it must necessarily follow that matters which go to the validity and enforc[ea]bility of that contract are germane, or relevant, to a determination of the right to possession." Similarly, in *Jack Spring*, we held that where a forcible action is based on unpaid rent, whether the tenant, in fact, owes rent is germane to that proceeding. *Jack Spring*, 50 Ill. 2d at 358-59. Indeed, we observed that:

> "[E]ven though the plaintiffs do not seek to recover rent in these actions, the question of whether rent is due and owing is not only germane, but in these cases where the right to possession is asserted solely by reason of nonpayment, is the crucial and decisive issue for determination." *Id.* at 358.

Accord *Peoria Housing Authority v. Sanders*, 54 Ill. 2d 478, 483 (1973).

¶ 17 In *Clore v. Fredman*, 59 Ill. 2d 20, 26-27 (1974), we examined our holdings in *Rosewood Corp.*, *Jack Spring*, and *Peoria Housing Authority*, and held that the landlord's motive for the attempted eviction was germane to the forcible proceeding where a state statute and local ordinance prohibited retaliatory evictions. We explained that, "[i]f in fact, the landlord's action is retaliatory, the landlord is not entitled to possession of the property and the action cannot be maintained." *Clore*, 59 Ill. 2d at 27.

¶ 18 In the present case, Spanish Court's claim to possession of Carlson's unit was based on nonpayment of assessments. It necessarily follows that whether Carlson, in fact, owes any assessments is germane to the proceeding. The issue in this case, however, is not simply whether a unit owner, like Carlson, may challenge whether assessments are due. Rather, the issue is whether the basis Carlson asserts for claiming that assessments are not due is legally sound. The appellate court, agreeing with Carlson, held that a unit owner's obligation to pay assessments may be nullified by the association's failure to repair or maintain the common

elements. 2012 IL App (2d) 110473, ¶¶ 28, 46. If correct as a matter of law, then Spanish Court's alleged failure in this case would be germane to the forcible action because Spanish Court's conduct, if proven, could defeat its claim for unpaid assessments, and, in turn, its claim for possession. But if Carlson's nullification defense is not a legally viable defense, then Spanish Court's alleged conduct is not germane to the forcible proceeding, and Carlson's affirmative defenses were properly stricken by the trial court.

¶ 19    Spanish Court maintains that the appellate court's recognition of a nullification defense rests on an ill-fitting analogy, namely, that the association-unit owner relationship is, for purposes of the forcible statute, analogous to the landlord-tenant relationship. See 2012 IL App (2d) 110473, ¶¶ 16, 26, 46. We agree with Spanish Court.

¶ 20    The relationship between a landlord and tenant is contractual. See generally 24 Ill. L. and Prac. *Landlord and Tenant* § 1, at 157 (2009). Although aspects of that relationship may be governed by state and local landlord-tenant laws, the relationship is created through the agreement of the parties. When a landlord breaches the terms of the agreement (the lease) by failing, for example, to comply with the implied warranty of habitability, cases have traditionally applied contract remedies, including damages, rescission, reformation, or abatement of rent. *Glasoe v. Trinkle*, 107 Ill. 2d 1, 15-17 (1985). *Cf. Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 70 (2006) ("Under general contract principles, a material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations.").

¶ 21    Although contract principles have sometimes been applied to the relationship between a condominium association and its unit owners based on the condominium's declaration, bylaws, and rules and regulations (1 Gary A. Poliakoff, The Law of Condominium Operations § 1:23 (1988 and Supp. 2012-13)), the relationship is largely a creature of statute, defined by the provisions of the Condominium Act (765 ILCS 605/1 *et seq.* (West 2008)). Under that Act, the board of managers, through whom the association of unit owners acts (765 ILCS 605/2(o) (West 2008)), has the duty "[t]o provide for the operation, care, upkeep, maintenance, replacement and improvement of the common elements." 765 ILCS 605/18.4(a) (West 2008). The Condominium Act also addresses the "[s]haring of expenses" among unit owners, and establishes that: "It shall be the duty of each unit owner *** to pay his proportionate share of the common expenses." 765 ILCS 605/9(a) (West 2008).[2] Although these duties may also be reflected in the condominium declaration and bylaws, as they are in this case, they are imposed by statute and exist independent of the association's governing documents. Accordingly, a unit owner's obligation to pay assessments is not akin to a tenant's purely contractual obligation to pay rent, which may be excused or nullified because the other party failed to perform.

¶ 22    The forcible statute itself distinguishes between the landlord-tenant relationship and the association-unit owner relationship. Section 9-209, applicable to leaseholds, states that a landlord may, after rent is due, "notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, *** *the lease will be terminated*," and the landlord may sue for possession and unpaid rent. (Emphasis added.) 735 ILCS 5/9-209 (West 2008). Thus,

---

[2]"Common expenses" is defined as "the proposed or actual expenses affecting the property, including reserves, if any, lawfully assessed by the Board of Managers of the Unit Owner's Association." 765 ILCS 605/2(m) (West 2008).

- 6 -

when a landlord successfully litigates its forcible action, the landlord-tenant relationship ceases and, except for any money judgment for past due rent, the tenant's rental obligation terminates.

¶ 23    With respect to condominium property, however, the forcible statute nowhere indicates that the association-unit owner relationship, or the condominium declaration, "will be terminated." A unit owner does not cease to be a unit owner even if dispossessed of his or her unit, and the obligations of condominium ownership, including the obligation to pay assessments, continue unabated. As set forth in section 9-111 of the forcible statute, a unit owner may only file a motion to vacate a judgment in favor of the association if, *inter alia*, the unit owner "is not in arrears on his or her share of the common expenses for the period *subsequent* to that covered by the judgment." (Emphasis added.) 735 ILCS 5/9-111(a) (West 2008). Section 9-111.1 also provides that the obligation to pay assessments continues, stating that where the board of managers rents the unit to satisfy the judgment, rental income may be applied, following satisfaction of the judgment, to "assessments accrued thereafter until assessments are current." 735 ILCS 5/9-111.1 (West 2008). These statutory sections also reveal that, unlike an order of possession in favor of a landlord, an order of possession in favor of an association is intended to be temporary, not permanent, "with possession eventually returning to the unit owner." *Knolls Condominium Ass'n*, 202 Ill. 2d at 457. See also Ill. Ann. Stat., ch. 30, ¶ 309.2, Historical and Practice Notes, at 198 (Smith-Hurd Supp. 1992) ("The relationship between a landlord and tenant is purely contractual and terminates upon a breach of that contract. By contrast the relationship between the condominium unit owner and the board of managers is statutory and ongoing.").

¶ 24    The different treatment that the forcible statute accords to leased property, on the one hand, and condominium property, on the other hand, underscores that the landlord-tenant relationship and the association-unit owner relationship are not analogous, and that the defenses available to a tenant are not necessarily available to a unit owner. Whether a unit owner may, nonetheless, assert a nullification defense requires a closer examination of the Condominium Act and the nature of a unit owner's obligation to pay assessments.

¶ 25    Section 9 of the Condominium Act, which establishes a unit owner's duty to pay assessments, does not provide, expressly or impliedly, that such duty is contingent upon the repair and maintenance of the common elements. Section 9 does state, however, that "[i]f any unit owner shall fail or refuse to make any payment of the common expenses *** when due[ ] the amount thereof *** shall constitute a lien on the interest of the unit owner in the property" which may be recorded and foreclosed by the board of managers. 765 ILCS 605/9(g)(1), (h) (West 2008). Moreover, section 18 provides:

> "[A] unit owner may not assign, delegate, transfer, surrender, or avoid the duties, responsibilities, and liabilities of a unit owner under this Act, the condominium instruments, or the rules and regulations of the Association; and *** such an attempted assignment, delegation, transfer, surrender, or avoidance shall be deemed void." 765 ILCS 605/18(q) (West 2008).

This section further states that "[t]he association shall have no authority to forbear the payment of assessments by any unit owner." 765 ILCS 605/18(o) (West 2008).

¶ 26    These provisions, when read together, demonstrate that a unit owner's liability for unpaid assessments is not contingent on the association's performance. The unit owner cannot "avoid"

the duty to pay assessments, *i.e.*, the duty cannot be annulled, vacated, defeated, or invalidated (see Webster's Third New International Dictionary 151 (1986)), and the association cannot refrain from enforcing that obligation. Accordingly, a unit owner's claim that its obligation to pay assessments was nullified by the association's failure to repair and maintain the common elements is contrary to the Condominium Act and is not a viable defense.[3]

¶ 27    We recognize that Spanish Court based its right to possession on Carlson's unfulfilled obligation to pay assessments under the condominium declaration, and not under the Condominium Act. Nothing in the declaration or bylaws, however, may conflict with the provisions of the Act. 765 ILCS 605/18, 4(i) (West 2008).

¶ 28    A nullification defense is not only inconsistent with the express provisions of the Condominium Act governing the payment of assessments, such a defense is inconsistent with the legislature's purpose in adopting section 9.2, authorizing the maintenance of a forcible action against a defaulting unit owner. 765 ILCS 605/9.2 (West 2008). " 'This section was adopted to provide a constitutionally permissible, quick method for collection of assessment arrearages ***.' " *Knolls Condominium Ass'n*, 202 Ill. 2d at 457-58 (quoting Ill. Ann. Stat., ch. 30, ¶ 309.2, Historical and Practice Notes, at 179-80 (Smith-Hurd Supp. 1991)). A nullification defense would inject a myriad of fact-based inquiries into the forcible action, unduly prolonging what was intended to be an expeditious proceeding. Not only would the forcible court need to determine whether the association breached its duty to repair or maintain a common element, the forcible court would need to determine whether that breach was "material," and whether that material breach constituted a partial or complete defense to the forcible action.

¶ 29    The necessity of a "quick method" for collection of past due assessments, unencumbered by extraneous matters, is manifest when we consider the manner in which condominium associations operate and the impact a nullification defense would have on their very existence. Condominium ownership is unique in that a unit owner holds fee simple title to a unit (765 ILCS 605/2(g) (West 2008)), as well as an interest with his or her fellow unit owners in the common elements (765 ILCS 605/4(e) (West 2008)). See also 1 Gary A. Poliakoff, The Law of Condominium Operations § 1:01 (1988 and Supp. 2012-13) ("The key characteristic that distinguishes the condominium concept from other forms of property ownership is the commonly owned property appurtenant to, and inalienable from each unit.").

¶ 30    The association, which is comprised of all the unit owners (765 ILCS 605/2(o) (West 2008)), "is responsible for the overall administration of the property through its duly elected board of managers." 765 ILCS 605/18.3 (West 2008). The officers and members of the board must "exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 2008). The business of the board, which includes, *inter alia*, the care and upkeep of the common elements, the employment of necessary personnel, the acquisition of appropriate insurance, and the payment of real property taxes (765 ILCS 605/18.4(a), (e), (f), (k) (West 2008)), is funded through the unit owners' assessments. The assessments are derived from the

---

[3]Although condominium property statutes vary, the argument that the right to collect assessments is dependent upon the association's duty to maintain the common elements has "not been generally accepted by the courts." 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:19 (1988 and Supp. 2012-13).

annual budget prepared by the board. See 765 ILCS 605/18(a)(6) to (8) (West 2008) (discussing procedure for adoption of the "proposed annual budget and regular assessments pursuant thereto"). The association's ability to administer the property is dependent upon the timely payment of assessments, and "any delinquency in unit owners' payments of their proportionate share of common expenses may result in the default of the association on its obligations or the curtailment of association directed services," impacting not only the delinquent unit owner, but all association members. 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:03 (1988 and Supp. 2012-13). Because of the interdependence that exists among unit owners, the condominium form of property ownership only works if each unit owner faithfully pays his or her share of the common expenses. When a unit owner defaults in the payment of his or her assessments, the resulting forcible entry and detainer action is thus brought "for the benefit of all the other unit owners." 765 ILCS 605/9.2(a) (West 2008). See also 765 ILCS 605/9(h) (West 2008) (statutory lien for common expenses "shall be for the benefit of all other unit owners").

¶ 31        Permitting a unit owner's duty to pay assessments to be nullified would thus threaten the financial stability of condominium associations throughout this state. As explained by the Massachusetts high court:

> "Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area expense charges. A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation. For the same reason that taxpayers may not lawfully decline to pay lawfully assessed taxes because of some grievance or claim against the taxing governmental unit, a condominium unit owner may not decline to pay lawful assessments." *Trustees of the Prince Condominium Trust v. Prosser*, 592 N.E.2d 1301, 1302 (Mass. 1992).

The Massachusetts high court thus held that "there is no right to set-off against a lawfully imposed condominium charge." *Id.* Although the Massachusetts court's holding was entered in the context of a statutory lien foreclosure action against a defaulting unit owner, its reasoning applies equally in the context of a forcible action against a defaulting unit owner. See also Andrea J. Boyack, *Community Collateral Damage: A Question of Priorities*, 43 Loy. U. Chi. L.J. 53, 56-80 (2011) (discussing, *inter alia*, the devastating impact of assessment delinquencies in today's housing market, and the unfair financial burden placed on nondelinquent owners).

¶ 32        Recognition that a unit owner's duty to pay assessments cannot be nullified does not mean that a unit owner cannot challenge whether assessments are due, nor does it mean that an aggrieved unit owner has no recourse. A unit owner could, for example, challenge whether assessments are due by challenging the association's recordkeeping, or the manner in which the assessment was adopted. See 765 ILCS 605/2(m) (West 2008) (defining " '[c]ommon [e]xpenses' " as those "lawfully assessed" by the board). In addition, a unit owner who believes he or she has been aggrieved by some act or omission of the board of managers may take steps to remove the offending board members; become involved in the management of the association by seeking election to the board; or seek recourse through the courts.

¶ 33    In this case, when the forcible action proceeded to trial, Carlson challenged the manner in which Spanish Court adopted one of its special assessments, for which Spanish Court sought payment. After hearing the evidence, the trial court disallowed that special assessment. Additionally, as noted earlier, Carlson elected to file a counterclaim for damages to her unit, which was severed by the trial court and transferred to another courtroom for disposition. Thus, Carlson will have an opportunity for a full and fair hearing on her claim that Spanish Court failed to repair and maintain the roof and brickwork, causing damage to her unit.

¶ 34                                        CONCLUSION

¶ 35    Carlson's claim that her duty to pay assessments was nullified by Spanish Court's failure to repair and maintain the common elements is not a viable defense to Spanish Court's forcible action as a matter of law, and is thus not germane to that proceeding. We, therefore, reverse that portion of the appellate court judgment vacating the trial court's judgment and remanding for partial reinstatement of Carlson's affirmative defenses, and affirm the judgment of the trial court.

¶ 36    Appellate court judgment reversed in part.

¶ 37    Circuit court judgment affirmed.

¶ 38    JUSTICE FREEMAN, dissenting:

¶ 39    The majority holds that in a forcible entry and detainer proceeding for unpaid assessments, a unit owner cannot raise as a defense an association's failure to repair or maintain the common elements. I disagree and respectfully dissent. I would hold that such a defense can be raised and is germane to the forcible proceeding.

¶ 40    I begin with the premise that Illinois is unique in allowing a condominium association to utilize the forcible statute to evict a unit owner for failure to pay assessments. *Knolls Condominium Ass'n*, 202 Ill. 2d at 458 (quoting Ill. Ann. Stat., ch. 30, ¶ 309.2, Historical and Practice Notes, at 180 (Smith-Hurd Supp. 1991)). When such action occurs, the unit owner maintains title to the unit and the association has the right to possession of the unit until the judgment for possession is vacated after the amount owed is paid. *Id*. (quoting Ill. Ann. Stat., ch. 30, ¶ 309.2, Historical and Practice Notes, at 180 (Smith-Hurd Supp. 1991)). The association may rent the unit and apply the rental funds to the delinquent common expenses. *Id*. at 457; see 735 ILCS 5/9-111.1 (West 2008). We are unaware of any other state that permits an association such a remedy in forcible entry and detainer. See 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:48 (1988 and Supp. 2012-13).

¶ 41    The forcible statute permits a defendant to offer into evidence any matter in defense of the action that is germane to the distinctive purpose of the proceeding. 735 ILCS 5/9-106 (West 2008). Neither the forcible statute nor the Condominium Act defines germane. Yet, sections 9-106 and 9-111 of the statute permit a claim for rent (735 ILCS 5/9-106 (West 2008)) as well as a claim for unpaid assessments (735 ILCS 5/9-111 (West 2008)) to be included in the action. This court has already determined that since a landlord can include a claim for unpaid rent in a forcible proceeding, a tenant may raise as a defense that no rent was due. *Jack Spring*, 50 Ill. 2d at 359. Specifically in *Jack Spring*, we held that the tenant could assert as a defense that the

landlord breached the implied warranty of habitability and as a result, the tenant's duty to pay rent was excused or nullified by the landlord's breach. *Jack Spring*, 50 Ill. 2d at 359. We reasoned that to hold that a landlord could, at his discretion, expand the issues (*i.e.*, assert a claim for rent) in a forcible proceeding, but the tenant could not (*i.e.*, assert a defense for breach of the lease terms, express or implied), violated "common sense and accepted rules of statutory interpretation." *Id*. at 358.

¶ 42 We should employ a similar analysis here. Spanish Court brought its complaint pursuant to the forcible statute and asserted counts for possession and breach of contract (the condominium declaration) as well as a claim for unpaid assessments. Similar to the tenant in *Jack Spring*, Carlson should be permitted to raise as a defense that the association's breach of its duty to repair or maintain the common elements excused or nullified her duty to pay assessments. Though the majority acknowledges Spanish Court based its right to possession on Carlson's failure to pay assessments under the condominium declaration and not the Condominium Act, it nevertheless maintains that the relationship between an association and unit owner is controlled by statute rather than contract. Thus, the majority concludes, for purposes of the forcible statute, analogies between the landlord-tenant relationship and unit owner-association relationship are "ill-fitting" and the defenses available to a tenant are not necessarily available to a unit owner. My view is more moderate. The unit owner-association relationship is governed both by statute (the Condominium Act) and contract (the condominium's declaration, bylaws and rules and regulations). Therefore, I believe that such a comparison is not "ill-fitting" and that a nullification defense should likewise be available to a unit owner.

¶ 43 Although the majority cites to *Rosewood Corp.* for support, I believe it supports my position. In *Rosewood Corp.*, we considered whether the defendants, who had entered into installment contracts for the purchase of residential properties, could assert as affirmative defenses in a forcible proceeding that the installment contracts were unconscionable and unenforceable based on the defendants' allegations of fraud and violations of their civil and constitutional rights. The defendants had stopped making their installment payments and "appear[ed] to have embarked upon a concerted course of self-determination and self-help, for an apparent purpose of securing a modification and renegotiation of their contracts." *Rosewood Corp.*, 46 Ill. 2d at 252. Noting that "germane" had been defined as "closely allied," "closely related," "closely connected," "relevant," and "pertinent," we held that the defendants' affirmative defenses challenging the validity and enforceability of their contracts were germane to a determination of the right to possession. *Id*. at 256-57. Specifically, we found that: "[w]here as here, the right to possession a plaintiff seeks to assert has its source in an installment contract for the purchase of real estate by the defendant, we believe it must necessarily follow that matters which go to the validity and enforc[ea]bility of that contract are germane, or relevant, to a determination of the right to possession." *Id*. We further noted that construing the statute in this manner "may interfere with the summary aspects of the remedy." *Id*. at 258. However, we concluded that the rights of the purchasers to be heard on relevant matters and to be secure in their constitutional rights were superior to that of the summary aspects of the remedy for possession. *Id*.

¶ 44 Similarly here, whether a unit owner owes condominium assessments is "closely allied," "related," "connected," "relevant" and "pertinent" to the condominium association's forcible

action for possession and unpaid assessments. When Spanish Court's right to possession is based on Carlson's failure to pay assessments pursuant to the condominium declaration, it must necessarily follow that the question of whether Carlson owes those assessments is germane or relevant to a determination of the right to possession.

¶ 45        Additionally, a nullification defense is not contrary to the provisions in the Condominium Act that govern the payment of assessments, as the majority asserts. The Condominium Act imposes a duty on unit owners to pay their proportionate share of the common expenses as well as a duty on associations to repair and maintain the common elements. Yet, it does not address a situation such as here where a unit owner stops paying assessments because the association failed to repair and maintain the roof, a common element. Since the Condominium Act is silent in this regard, permitting a unit owner to raise a nullification defense is not contrary to the Condominium Act's provisions.

¶ 46        The majority also references in a footnote that "the argument that the right to collect assessments is dependent upon the association's duty to maintain the common elements has 'not been generally accepted by the courts,' " *Supra* ¶ 26 n.3 (citing 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:19 (1988 and Supp. 2012-13)). However, this assertion ignores the fact that Illinois is unique in that it permits condominium associations to utilize the forcible statute to evict a unit owner for failure to pay assessments. Therefore, a comparison to other courts' decisions is not persuasive.

¶ 47        Moreover, a nullification defense is not contrary to the express purpose of forcible proceedings to provide a "quick method" to collect assessment arrearages unencumbered by "extraneous matters." If a tenant can raise the defense in a forcible proceeding, I fail to see much difference in the nature and extent of the proceeding if raised by a unit owner. The majority acknowledges that a unit owner could challenge whether assessments were due, though on a basis other than a nullification theory; yet, it does not explain why a nullification defense would make the proceeding any longer or more cumbersome than any other defense. Likewise, the majority does not explain how such a defense is an "extraneous matter" when the sole basis for Spanish Court's complaint was Carlson's failure to pay assessments. We pointed out in *Jack Spring* that the forcible statute had to some extent lost its distinctive purpose of only restoring possession, and, in *Rosewood Corp.*, we recognized a departure from the summary aspects of the remedy. *Jack Spring*, 50 Ill. 2d at 358; *Rosewood Corp.*, 46 Ill. 2d at 258. Here, the forcible action proceeded to a bench trial on Spanish Court's claim for unpaid special assessments, accrued assessments, late charges, attorney fees and costs. Clearly, the proceeding is not quite as "quick" as the majority asserts. I disagree that permitting a unit owner to raise a nullification defense would interfere with the summary aspects of the forcible proceeding.

¶ 48        Further, we noted back in 1972, in *Jack Spring*, the "salutary trend" toward determining the rights and liabilities of litigants in one, rather than multiple, proceedings. *Jack Spring*, 50 Ill. 2d at 359. Interpreting the forcible statute as permitting a unit owner to raise such a defense is consistent with this pronouncement.

¶ 49        Lastly, the majority's decision rests upon an unfounded fear that permitting a unit owner to raise a nullification defense would threaten the financial stability of condominium associations throughout the state. As the appellate court noted, the association's breach must be material and cannot be based on a general disagreement with the association. The threat of eviction also

serves as a very powerful tool to encourage compliance by unit owners and a unit owner who ceases paying assessments does so with the utmost peril. It is true that the form of condominium ownership only works if each unit owner faithfully pays his or her share of the common expenses. It is equally true that condominium ownership only works if the association likewise fulfills its obligations. Not permitting a unit owner to raise a nullification defense in a forcible action denies a voice to an ever-growing segment of the population which purchases condominium property. True, unit owners can continue to pay assessments and bring a lawsuit against the association for its failure to repair or maintain; however, that puts an expensive and time-consuming burden on the unit owner rather than litigating the matter in the forcible proceeding that is already before the court, as is done in a landlord-tenant situation.

¶ 50     In the end, I believe this is a matter best left to the legislature. The legislature included condominium property within the province of the forcible statute and further provided that a claim for unpaid assessments may be included in the forcible action for possession. Yet, it provided no further guidance as to what defenses may be germane to the proceeding. If the legislature had wanted to foreclose a unit owner from raising a nullification defense in a forcible action, it could have so provided. It did not.

¶ 51     JUSTICES KILBRIDE and BURKE join in this dissent.