2023 IL App (1st) 221023-U

THIRD DIVISION
March 22, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

No. 1-22-1023
_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| HICKORY HEIGHTS CONDOMINIUM UNIT NO. 1, INC., AN ILLINOIS NOT FOR PROFIT CORPORATION, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | 2020-M5-003957 |
| CAROLINE AKUNNAYA OKOYE, | ) ) ) | Honorable Matthew J. Carmody, Judge Presiding |
| Defendant-Appellant. | ) | |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

O R D E R

¶ 1    *Held*: In condominium association's action to evict unit owner based on alleged nonpayment of common expenses, unit owner's "affirmative defense" that association's board of managers had not been properly elected was not germane.

¶ 2    Caroline Akunnaya Okoye, who was evicted from her condominium unit in Hickory Hills, Illinois and ordered to pay $47,123 in common expenses and fees to the condominium association, Hickory Heights Condominium Unit No. 1, Inc., appeals from the circuit court's judgment, contending that because the association's board of managers was not properly elected, it did not have authority to adopt an annual budget of common expenses and lacked standing to sue her for failing to pay her portion. The association responds that the Okoye's liability for common expenses

as a unit owner was not invalidated or extinguished by the board of managers' failure to strictly adhere to the association's bylaws or the provisions in the Condominium Property Act regarding elections. 765 ILCS 605/1 *et seq.* (West 2018).

¶ 3 Okoye purchased the condominium at issue, 8620 West 95th Street, Unit 1A1, in September 2018. It was one of eight units in the condominium community. Monthly homeowners' association fees per unit were $220 in 2018, and increased each year until they were $270 in 2021.

¶ 4 The condominium association filed a verified complaint against Okoye in August 2020, seeking eviction and possession of her unit, unpaid and accrued common expenses, as well as late fees, interest, and attorney fees, all totaling $4959.

¶ 5 Okoye countered with a motion to dismiss, on grounds that the association lacked "capacity" to sue her in 2020, because the board of managers was not elected as specified in the association's bylaws and Illinois law. She tendered her affidavit to that effect. The association responded with an affidavit from Mary Fontana, indicating that Fontana was elected to the association's presidency during a monthly meeting in December 2019 and that Okoye had even attended the meeting. Okoye replied with an affidavit from Ahmed El Houmaidi, stating that there had been no election since he purchased Unit 1A3 in 2017 and that Fontana was unilaterally holding herself out as president. After oral arguments, the circuit court denied Okoye's motion to dismiss because there was a fact dispute about the association governance issues that Okoye relied upon.

¶ 6 Okoye then filed an answer in which she asserted the association governance issues as affirmative defenses.

¶ 7 The parties next exchanged discovery, then cross-motions for summary judgment as to

whether the board had a duly-elected president and a valid annual budget setting out the association's annual assessments. The circuit court denied the cross-motions because there was a material fact dispute.

¶ 8     The association's claim proceeded to a one-day bench trial in January 2022, which the circuit court described as follows in its written judgment order. The association's only witness was Fontana, who testified that for 29 years, she had been a unit owner and the association's president. Fontana testified about Okoye's financial obligations to the association and her failure to meet them. On cross-examination, Fontana was asked about her governance of the association's meetings between 2018 and 2021, and in particular, the election of the board of managers. This cross-examination established that Fontana, in her capacity as president, "failed to strictly adhere to the governance requirements set forth in the Declaration and the Condominium Property Act for the annual meetings and elections held in 2018, 2019, and 2020." The cross-examination did not, however, address Okoye's nonpayment of assessments or the arrearages at issue by the association's complaint. Okoye's five witnesses included the two other members of the association's three-person board of managers, two other unit owners, and Okoye herself, all of whom testified about the 2020 election. In addition, Okoye testified that she made an assessment payment in January 2020, "but [her testimony] was unclear on the manner of payment."

¶ 9     The circuit court gave the parties time to tender legal memos (which were not included in the record on appeal), and then considered those arguments as well as the trial testimony and exhibits.

¶ 10    The court rejected Okoye's contention that "a condominium association, as part of its *prima facie* case in [an eviction] action, must prove that it properly adhered to or complied with

the statutory requirements and by-laws governing not-for-profit condominium associations." The court found that neither the Eviction Act (735 ILCS 5/15-1101 *et seq.* (West 2020) (formerly known as the Forcible Entry and Detainer Act)) nor the Condominium Property Act (765 ILS 605/1 *et seq.* (West 2020)) required the condominium association to prove, as part of its eviction action, that it strictly adhered to or even complied with the Hickory Heights bylaws or the condominium association governance statutes. The court found that the association provided Okoye with the statutorily-required demand and notice of the arrearage of her common expenses, late charges, interest, and attorney fees, and that the association's unrebutted evidence showed that she remained liable. It entered judgment in favor of Hickory Heights for $27,660, as well as $18,740 in attorney fees, and $722.45 in costs, and granted Hickory Heights possession of Okoye's unit, subject to a stay which has lapsed.

¶ 11    In a motion for reconsideration, Okoye reargued the merits of her motion to dismiss and motion for summary judgment, and the significance of the election testimony, and contended that the circuit court "erred in not connecting the adoption of the budget by a duly elected Board with lawful assessments where a judgment could be entered." She contended, "you simply can't get to point B (collecting assessments), without properly completing point A (legally electing a board who *(sic)* then can legally adopt a budget to determine assessments)." The circuit court found that Okoye's motion relied on a mischaracterization of the facts established at trial, and that her "nonpayment of condominium assessments as recourse for challenging actions of the Board of Managers [was] improper." The court reiterated that the issues and evidentiary findings that Okoye was focusing on were "not germane" to the eviction suit. The court denied the motion. This appeal followed.

¶ 12 Okoye contends that when the circuit court found that arguments about the board's governance were not germane to the eviction action, it erroneously and "completely dismissed the [requirements of the] Condo Act" as "optional." She contends that the circuit court should have held the board to its burden of showing that board election procedures were followed so that the board had the right to manage the business of the condominium association. She does not dispute her obligation to share in the condominium community's common expenses, the evidence of her financial liability, the amount calculated and entered as a money judgment, or the validity of the order for possession.

¶ 13 Because our review as to whether Hickory Heights was entitled to judgment implicates the Eviction Act (735 ILCS 5/15-1101 *et seq*. (West 2020)) and the Condominium Property Act (765 ILCS 605/1 *et seq*. (West 2020), the *de novo* standard of review is controlling. *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 13.

¶ 14 Section 9.1(b) of the Condominium Property Act states: "The board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." 765 ILCS 605/9.1(b) (West 2020).

> "Standing is a doctrine that requires a plaintiff to have some real interest in his or her cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. 59 Am. Jur. 2d *Parties,* §§ 26-29 (Database updated November 2015). The doctrine precludes persons who have no common law or statutory right or interest in a controversy from bringing a claim. *Potter v. Ables,* 242 Ill. App. 3d 157, 158, 610 N.E.2d 159, 160 (1993); *Schlenker,* 209 Ill. 2d at 464-65, 808 N.E.2d at 1000.

A standing challenge focuses on the party seeking relief—not on the merits of the controversy—and asks whether that party is entitled to pursue the legal challenge, either in their personal or representative capacity. 59 Am. Jur. 2d *Parties* § 28 (Database updated November 2015); *Powell v. Dean Foods Co.,* 2012 IL 111714, ¶ 36, 965 N.E.2d 404. The doctrine is applied to ensure that the courts are available to decide actual, specific controversies between parties and are not mired in abstract questions, moot issues, or cases brought on behalf of parties who do not desire judicial aid. *Flast v. Cohen,* 392 U.S. 83, 99-100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Powell,* 2012 IL 111714, ¶ 36, 965 N.E.2d 404. 'To have standing, a [claimant] must present an actual controversy between adverse parties and, as to the controversy, the [claimant] must not be merely curious or concerned but must possess some personal claim, status, or right, a distinct and palpable injury which is fairly traceable to the [respondent's] conduct and substantially likely to be redressed by the grant of such relief.' *Potter*, 242 Ill. App.3d at 158, 610 N.E.2d at 160." *In re Estate of Zivin*, 2015 IL App (1st) 150606, ¶ 14.

¶ 15    The Eviction Act outlines the necessary steps and proceedings to determine the right and restoration of possession to land and property. In order to prevail in an eviction action regarding condominium property, the association must establish (1) common expenses or other expenses that were lawfully agreed upon were owed, (2) the unit owner failed to pay, and (3) the amount owed. *Sherwood Commons Townhome Owners Ass'n, Inc. v. Dubois*, 2020 IL App (3d) 180561, ¶ 21 (citing *Board of Managers of Dunbar Lakes Condominium Ass'n II v. Beringer*, 94 Ill. App. 3d 442, 447 (1981); *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 25.

¶ 16    Okoye's standing argument concerns the formation of the board of managers as the association's managing body, including its right to assess the eight condominium unit owners for their common use of electric service, water and sewage service, snow removal, legal services, building maintenance, and other various expenses which the community incurred. Okoye may have a legitimate concern about the 2020 election process, but that concern is not within the scope of this eviction action (and it is not a true "standing" argument, as discussed below, it is an unpersuasive attempt to nullify the association's claim regarding common expenses). Both the Eviction Act and the Condominium Act focus on the unit owner's obligation to shoulder his or her fair of common expenses and the association's inability to forgo their collection for the good of the condominium community. Courts applying those statutes in this context have determined that any issues outside the scope of these limited financial issues are irrelevant to the proceedings. For instance, section 9-111 of the Eviction Act specifies:

> "(a) As to property subject to the provisions of the 'Condominium Property Act,' approved June 20, 1963, as amended, when the action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and the court shall enter an eviction order in favor of the plaintiff and judgment for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs." 735 ILCS 5/9-111 (West 2020).

¶ 17    Section 9-106 of the Eviction Act *expressly* limits the matters that may be raised in an

eviction action. That section states: "no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." 735 ILCS 5/9-106 (West 2020). The statute does not define "germane," however, a long body of caselaw has determined that the "distinctive purpose" of an eviction action is to gain possession of property that is unlawfully held. *Spanish Court*, 2014 IL 115342, ¶ 15 (citing *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 357-58 (1972)). Thus, the only matters that are "germane" are matters that are "closely tied to the plaintiff's claim for possession." *Spanish Court*, 2014 IL 115342, ¶ 16. In our opinion, how the board was elected is not closely tied to the association's claim for possession of Okoye's unit. Strict compliance with the election procedures (that is, how the condominium community was managed), is not germane to the association's claim to take possession of a non-contributing owner's unit. The Eviction Act anticipates that after taking possession, the association will recoup overdue assessments by renting out the noncompliant owner's unit. Section 9-111.1 of the Eviction Act provides that if the condominium association opts to lease out the unit, it "shall first apply all rental income to assessments and other charges sued upon in the eviction action plus statutory interest on a monetary judgment, if any, attorneys' fees, and court costs incurred." 735 ILCS 5/9-111.1 (West 2020). Additional rental income shall then be applied "to other expenses lawfully agreed upon (including late charges), any fines and reasonable expenses necessary to make the unit rentable, and lastly to assessments accrued thereafter until assessments are current." 735 ILCS 5/9-111.1 (West 2020). "A unit owner does not cease to be a unit owner even if dispossessed of his or her unit" and "an order of possession in favor of an association is intended to be temporary, not permanent, 'with possession eventually returning to the unit owner.' " *Spanish Court*, 2014 IL 115342, ¶ 23 (citing sections of the Eviction Act and *Knolls Condominium Ass'n v. Harms*, 202

Ill. 2d 450, 457 (2002)). "Any surplus [rental income] shall be remitted to the unit owner." 735 ILCS 5/9-111.1 (West 2020).

¶ 18    Another indication that board governance issues are not germane to an eviction action is that the duties of an association under the condominium declaration and bylaws and the Condominium Act are set out as independent of the duty of a condominium unit owner to pay assessments. *Spanish Court*, 2014 IL 115342, ¶¶ 25-26. The Condominium Act specifies that the "association shall have no authority to forbear the payment of assessments by any unit owner." 765 ILCS 605/18(o) (West 2018). As for the unit owner, that person "may not assign, delegate, transfer, surrender, or *avoid* the duties, responsibilities, and liabilities of a unit owner under this Act" and that an attempt to do so "shall be deemed void." (Emphasis added.) 765 ILCS 605/18(q) (West 2018). Together, these statutory provisions "demonstrate that a unit owner's liability is not contingent on the association's performance" of its own obligations. *Spanish Court*, 2014 IL 115342, ¶ 26. "The unit owner cannot 'avoid' the duty to pay assessments, *i.e.*, the duty cannot be annulled, vacated, defeated, or invalidated *** and the association cannot refrain from enforcing that obligation." *Spanish Court*, 2014 IL 115342, ¶ 26.

"The association, which is comprised of all the unit owners (765 ILCS 605/2(o) (West 2008)), 'is responsible for the overall administration of the property through its duly elected board of managers.' 765 ILCS 605/18.3(o) (West 2008). The officers and members of the board must 'exercise the care required of a fiduciary of the unit owners.' 765 ILCS 605/18.4 (West 2008). The business of the board, which includes, *inter alia*, the care and upkeep of the common elements, the employment of necessary personnel, the acquisition of appropriate insurance, and the payment of real property taxes (765 ILCS 605/18.4(a),

(e), (f), (k) (West 2008)), is funded through the unit owners' assessments. The assessments are derived from the annual budget prepared by the board. See 765 ILCS 605/18(a)(6) to (8) (West 2008) (discussing procedure for adoption of the 'proposed annual budget and regular assessments pursuant thereto'). The association's ability to administer the property is dependent upon the timely payment of assessments, and 'any delinquency in unit owners' payments of their proportionate share of common expenses may result in the default of the association on its obligations or the curtailment of association directed services,' impacting not only the delinquent unit owner, but all association members. 1 Gary A. Poliakoff, The Law of Condominium Operations § 5:03 (1988 and Supp. 2012-13). Because of the interdependence that exists among unit owners, the condominium form of property ownership only works if each unit owner faithfully pays his or her share of the common expenses. When a unit owner defaults in the payment of his or her assessments, the resulting forcible entry and detainer action is thus brought 'for the benefit of all the other unit owners.' 765 ILCS 605/9.2(a) (West 2008). See also 765 ILCS 605/9(h) (West 2008) (statutory lien for common expenses 'shall be for the benefit of all other unit owners'). *Spanish Court*, 2014 IL 115342, ¶ 30.

¶ 19    In an eviction action, permitting a unit owner's duty to pay assessments to be nullified by a defense regarding the association's failure to properly perform its duties would "threaten the financial stability of condominium associations throughout this state." *Spanish Court*, 2014 IL 115342, ¶ 31.

    " 'Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area expense charges.

A system that would tolerate a unit owner's refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation. For the same reason that taxpayers may not lawfully decline to pay lawfully assessed taxes because of some grievance or claim against the taxing governmental unit, a condominium unit owner may not decline to pay lawful assessments." *Spanish Court*, 2014 IL 115342, ¶ 31 (quoting *Trustees of the Prince Condominium Trust v. Prosser,* 412 Mass. 723, 592 N.E.2d 1301, 1302 (1992)).

¶ 20 We have looked primarily to *Spanish Court*, a Supreme Court case that involved a factually analogous dispute. *Spanish Court*, 2014 IL 115342. In that case, a condominium association brought an eviction action, alleging that a unit owner was six months behind in her monthly assessments, and that the association was entitled to a money judgment and an order for possession of her unit. *Spanish Court*, 2014 IL 115342, ¶ 3. The unit owner did not dispute her failure to pay, but denied that she owed the assessments, alleging that the association's failure to perform its duty of maintaining the roof and brickwork above her unit resulted in water damage in her unit. *Spanish Court*, 2014 IL 115342, ¶ 3. The court discussed the condominium declaration as well as the Condominium Property Act, and rejected the unit owner's attempt to nullify her obligation to pay the assessments on grounds that the board was in breach of its duties to her. Okoye's argument regarding Hickory Heights's lack of compliance with the condominium declaration and the Condominium Property Act is essentially no different from the argument that was rejected in *Spanish Court*. We find that the undisputed failure of the association to convene a proper election for the 2020 term is not pertinent to Okoye's duty to pay assessments, and that the circuit court was correct in finding that Okoye's defense was not germane to the eviction action.

¶ 21　Okoye is not disputing the association's evidence regarding the common expenses that were assessed, her failure to pay them, or the amount that she owed.

¶ 22　Accordingly, we affirm the circuit court's judgment.

¶ 23　Affirmed.