# Illinois Official Reports

## Appellate Court

---

**Board of Managers of the Inverrary Condominium Ass'n v. Karaganis,**
**2017 IL App (2d) 160271**

---

| | |
|---|---|
| Appellate Court Caption | BOARD OF MANAGERS OF THE INVERRARY CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. JAMES KARAGANIS and UNKNOWN OCCUPANTS, Defendants (James Karaganis, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0271 |
| Filed | June 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-LM-1993; the Hon. Michael J. Fusz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Norman J. Lerum II and Catherine E. Lerum, of Norman J. Lerum, P.C., of Chicago, for appellant.<br><br>Jordan D. Gilman, of Dickler, Kahn, Slowikowski & Zavell, Ltd., of Arlington Heights, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, James Karaganis, appeals a judgment entered in the Lake County circuit court in favor of plaintiff, the board of managers of the Inverrary Condominium Association, pursuant to the Forcible Entry and Detainer Act (forcible statute) (735 ILCS 5/9-101 *et seq.* (West 2014)). Defendant argues that neither the forcible statute nor the Condominium Property Act (Condominium Act) (765 ILCS 605/1 *et seq.* (West 2014)) imposes a personal obligation on him to satisfy any money judgment, apart from having to surrender the use and benefit of his condominium unit. Furthermore, he contends that, as part of considering "the nature of the action" when determining the amount of attorney fees to award to plaintiff (735 ILCS 5/9-111(b)(iv) (West 2014)), the trial court should have considered various matters that defendant had raised in his affirmative defenses. Finally, defendant argues that plaintiff should be sanctioned for filing a false affidavit in the trial court regarding discovery compliance. For the reasons that follow, we affirm.

¶ 2    I. BACKGROUND

¶ 3    Defendant owns a condominium unit in Deerfield, Illinois. On August 29, 2012, plaintiff filed a forcible entry and detainer complaint alleging that defendant had failed to pay common expenses in the amount of $5271.15 between December 2009 and July 2012. Plaintiff sought a judgment of possession, as well as a money judgment that included attorney fees and costs. See 735 ILCS 5/9-111(a) (West 2014) (when a condominium owner fails to pay his or her proportionate share of the common expenses and the court finds that such expenses are due, the plaintiff is entitled to possession of the premises and to a judgment for the amount due, including reasonable attorney fees and costs).

¶ 4    In September 2012, defendant, *pro se*, filed a counterclaim. He alleged that on December 16, 2010, he found water leaking into his garage due to a plumbing failure in an adjacent unit. The water flowed through his ceiling, rolled down the interior walls, and entered his living space. According to defendant, plaintiff refused to remediate the problem, and he incurred damages in the amount of $6217.

¶ 5    In October 2012, defendant filed his answer and affirmative defenses. As his first affirmative defense, defendant alleged that plaintiff breached its contractual duty to maintain and repair the common elements of the condominium property. As his second affirmative defense, defendant alleged that his obligation to pay his monthly assessment was nullified by plaintiff's failure to maintain and repair the common elements, such that he had actually *overpaid* his assessments between January 2010 and October 2012. In support of his affirmative defenses, defendant relied on this court's decision in *Spanish Court Two Condominium Ass'n v. Carlson*, 2012 IL App (2d) 110473, ¶ 26, which held that a condominium association's failure to perform its duties with respect to the common elements is a defense to a forcible entry and detainer action.

¶ 6    On March 20, 2014, in a 4 to 3 decision, the supreme court reversed our judgment in part. See *Spanish Court Two Condominium Ass'n v. Carlson*, 2014 IL 115342, ¶ 36. The court held that any purported failure by a condominium association to maintain and repair the common elements does not nullify an owner's obligation to pay assessments; such breach by the association is neither a legally viable defense to a forcible action nor a matter that is germane to such proceedings. *Carlson*, 2014 IL 115342, ¶ 35.

¶ 7          In the period between October 2012 (when defendant filed his original affirmative defenses) and March 2014 (when the supreme court issued its decision in *Carlson*), the parties engaged in extensive litigation regarding the sufficiency of defendant's pleadings. Neither party requested a stay of the proceedings while *Carlson* was pending before the supreme court. Defendant represented himself until April 2013, when an attorney first appeared on his behalf. In April 2014, the parties settled defendant's counterclaim. After that point, the dispute between the parties focused primarily on the issue of plaintiff's entitlement to attorney fees. As of April 2014, plaintiff was seeking more than $17,000 in attorney fees in connection with this action.

¶ 8          In August 2014, defendant filed his third amended answer and amended affirmative defenses. Only defendant's second, third, and fifth defenses are relevant to this appeal. As his second defense, defendant alleged that plaintiff had breached its duty to maintain and repair the common elements and that such breach barred plaintiff from recovering contractual attorney fees pursuant to its declarations or its rules and regulations. For similar reasons, as his third defense, defendant alleged that, in deciding whether to award plaintiff attorney fees pursuant to section 9-111 of the forcible statute, the court should consider that (1) plaintiff breached its fiduciary duties, (2) plaintiff had unclean hands, and (3) when this action was originally filed, defendant's arrearage was justified by this court's decision in *Carlson*. As his fifth affirmative defense, defendant asserted "lack of causation." Specifically, he alleged that plaintiff's attorney fees were a direct result of its own breach of its contractual, fiduciary, and statutory obligations to maintain and repair the condominium's common elements.

¶ 9          In January 2015, the court set deadlines for written discovery but ordered that the parties would not engage in oral discovery. In April 2015, defendant filed what he styled as a motion *in limine*, in which he requested sanctions against plaintiff for failing to comply with the rules of discovery. One of the alleged discovery violations was plaintiff's failure to provide an affidavit of compliance certifying that document production was complete. See Ill. S. Ct. R. 214(c) (eff. July 1, 2014). As a sanction, defendant moved the court to bar plaintiff from prosecuting its claims for late fees and attorney fees.

¶ 10          The court denied defendant's motion but ordered plaintiff to answer any outstanding discovery and to furnish an affidavit of compliance. On May 11, 2015, plaintiff's president, Lynne Mastrogany, signed an affidavit attesting that she was familiar with defendant's request for production of documents, plaintiff's response to that request, and the documents produced in response to that request. Mastrogany continued: "The Association's response and production of documents in its possession that are responsive to the Defendant's First Request for Production of Documents is complete, to the best of my knowledge, information and belief."

¶ 11          The matter proceeded to trial on August 3, 2015. The parties stipulated that defendant owed $8154.75 for assessments, and plaintiff thus decided that it had no need to call any witnesses. Plaintiff tendered its third amended fee petition to the court, requesting attorney fees of $48,835 and costs of $287.95.

¶ 12          In his case-in-chief, defendant introduced evidence detailing both the extensive water damage to his unit that began in December 2010 and plaintiff's failure to timely remediate that damage. For purposes of this appeal, it will suffice to say that defendant's unit remained severely water damaged until 2013, when plaintiff paid for the necessary repairs.

¶ 13    During defendant's case-in-chief, he also elicited certain testimony that later became the basis for a second motion for sanctions. Defendant took the position that plaintiff had incurred unnecessary legal expenses in this action, so defense counsel asked a number of questions at trial regarding plaintiff's process of supervising its attorneys. Gyneen Goodwin, an employee of the company that managed the condominium property, testified that she contracted with and communicated with plaintiff's lawyers but that she did not supervise or manage them. She testified that she did not consult with plaintiff's lawyers with respect to the decisions made in connection with the case. When asked who was supervising plaintiff's lawyers, she responded: "Well, Inverrary. We're contracting with them as their attorneys." To her knowledge, there was nobody on plaintiff's board or at the management company who made decisions about what plaintiff's lawyers did in the case. On cross-examination by plaintiff's counsel, Goodwin testified that when an account is turned over for collection, she does not supervise every aspect of the case. She explained that she received monthly invoices from plaintiff's attorneys and that, to her knowledge, they had not done anything unauthorized.

¶ 14    Defendant also questioned Mastrogany, the president of the association, about the supervision of plaintiff's counsel. When asked whether she supervised plaintiff's lawyers during the course of this litigation, she responded: "We do not supervise our attorneys." On cross-examination by plaintiff's counsel, Mastrogany testified that all of the charges in plaintiff's third amended fee petition were in accordance with the collection of assessments and therefore were authorized by plaintiff.

¶ 15    Another issue that arose at trial was whether plaintiff had produced all documents in its possession that were responsive to defendant's discovery requests. Defendant was particularly concerned about whether plaintiff's counsel had improperly withheld certain work reports prepared by Dick Fensterle, who at one time had worked as a building engineer at the condominium property. Goodwin testified that she searched her computer for any work reports completed by Fensterle relating to defendant's unit. Asked what she found, she responded: "I don't have it with me. I turned it all over to counsel." When asked specifically whether she found any work orders completed by Fensterle, she testified that she "did see some information from [him] regarding water," but she "handed it all over to counsel."

¶ 16    One final discovery issue that arose at trial pertained to the certificate of discovery compliance that Mastrogany had signed. As noted above, Mastrogany averred in her affidavit that she was familiar with defendant's request for production of documents, plaintiff's response to that request, and the documents produced by plaintiff. At trial, she acknowledged having signed the affidavit. However, she testified that she had not personally seen either defendant's request or the documents that were produced by plaintiff.

¶ 17    On the day scheduled for closing arguments, defendant filed a motion for sanctions pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). He argued that Mastrogany's trial testimony contradicted her affidavit's assertion that she was familiar with the discovery request and response. Defendant contended that he was prejudiced by this false affidavit because his counsel prepared for trial with the expectation that Mastrogany was familiar with the documents. According to defendant, sanctions were also appropriate because plaintiff withheld documents, specifically, work orders created by Fensterle. Defendant proposed that it would be appropriate to award him attorney fees or to dismiss the action with prejudice.

¶ 18    The court entered a briefing schedule on defendant's motion for sanctions and heard closing arguments from the parties. During plaintiff's closing argument, the court questioned plaintiff's counsel extensively about particular charges in the fee petition. In defendant's closing argument, his counsel urged the court to consider a number of factors when determining whether to award plaintiff attorney fees, including: plaintiff's failure to fulfill its contractual obligations to maintain the common elements and repair the damage to defendant's unit, defendant's right to rely on our decision in *Carlson* until it was reversed by the supreme court, and plaintiff's failure to supervise its attorneys to stop them from using this case as "an ATM machine."

¶ 19    On November 20, 2015, the court made a lengthy record of its reasons for rejecting defendant's affirmative defenses. Among those reasons was that, in light of the supreme court's decision in *Carlson*, the court could not take plaintiff's alleged wrongful actions into account when awarding fees. However, the court thoroughly scrutinized plaintiff's fee petition and ultimately awarded plaintiff $23,300, less than half the requested amount. The court announced its judgment as follows:

"Accordingly, I will enter an *in personam* money judgment against [defendant] in the amount of $8,159.85[1] for unpaid assessments *** , and an *in rem* judgment against [defendant's unit] for the same amount, and an order of possession of the unit pursuant to [section 9-111 of the forcible statute]. I will stay enforcement of the order of possession for a period of 90 days from the entry of this order.

Judgment is also entered in favor of plaintiff and against the defendant, *in personam* judgment and *in rem* judgment against [his unit] in the amount of $23,300 for attorney's fees, plus what I believe are the allowable court costs of $211."

Defense counsel requested clarification regarding the court's use of the term "*in personam* judgment," arguing that "the judgment is enforceable only against the condominium property rather than against any other asset held by the unit owner." After a discussion between the court and the parties, the court rejected defendant's position.

¶ 20    On March 11, 2016, the court denied defendant's posttrial motion as well as his motion for sanctions. In announcing its ruling on the motion for sanctions, the court questioned how Mastrogany could have made the statements in her affidavit without having reviewed defendant's discovery request and plaintiff's response. The court explained that it was not as concerned with Mastrogany's assertion that she was "familiar" with the documents at issue as it was that Mastrogany had averred that discovery was complete "to the best of [her] knowledge, information and belief." According to the court, "information and belief" was insufficient for such an affidavit, and the affidavit was "misleading." Nevertheless, the affidavit did not amount to a discovery violation that warranted sanctions under Rule 219(c). The court explained that it "had no indication that Miss Mastrogany was not acting in good faith." The court also considered that, although defendant had acted diligently in requesting discovery and there was some surprise to the defense at trial, there was "no solid evidence" that plaintiff had withheld any of Fensterle's reports because the attorneys failed to ask follow-up questions of the witnesses at trial. Furthermore, according to the court, when Mastrogany

---

[1]The parties had stipulated at the beginning of trial that defendant owed $8154.75 for unpaid assessments. The court's written order of November 20, 2015, entered judgment in the amount of $8159.75. Neither party makes an issue of these discrepancies on appeal.

admitted her lack of personal knowledge of the documents tendered in discovery, defendant could have requested a trial recess or an additional certificate of compliance to ensure that plaintiff's counsel had indeed turned over all relevant documents. Moreover, the court found that defendant was not prejudiced, given that he presented ample evidence that plaintiff had "just kind of sat on their [*sic*] hands" with respect to his damaged unit. Even if some work orders existed, they would not have added anything to the case, given that the supreme court's decision in *Carlson* indicated that plaintiff's breach of its duties was not relevant to defendant's duty to pay assessments.

¶ 21    Defendant timely appealed.

¶ 22                                    II. ANALYSIS
¶ 23                          A. Enforcing a Judgment Entered Pursuant to
                                Section 9-111(a) of the Forcible Statute

¶ 24    Defendant first argues that neither the forcible statute nor the Condominium Act imposes a personal obligation on him to satisfy the judgment for unpaid assessments, costs, and attorney fees, apart from having to surrender the use and benefit of his condominium unit. According to defendant, "[t]here is no case law or statutory section that provides a condominium association the right to levy a unit owner's assets to satisfy a money judgment entered under the forcible entry and detainer statute." Instead, he proposes, the appropriate remedy "is simply possession until the condominium association is paid by the unit owner or through rental income."

¶ 25    Defendant's argument requires us to interpret section 9-111(a) of the forcible statute, and our review is *de novo*. *State Place Condominium Ass'n v. Magpayo*, 2016 IL App (1st) 140426, ¶ 20. "The primary rule of statutory construction is to ascertain and give effect to the legislature's intent." *Bueker v. Madison County*, 2016 IL 120024, ¶ 13. "The best indication of that intent is found in the statutory language, given its plain and ordinary meaning." *Price v. Philip Morris, Inc.*, 2015 IL 117687, ¶ 30. We read the statute as a whole and avoid construing it in a manner that would render any portion meaningless or superfluous. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 390 (2009).

¶ 26    Section 9-111(a) of the forcible statute provides, in relevant part:

    "As to property subject to the provisions of the 'Condominium Property Act', *** when the action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, *** and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and judgment in favor of the plaintiff shall be entered for the possession thereof and for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs. The awarding of reasonable attorney's fees shall be pursuant to the standards set forth in subsection (b) of this Section 9-111. The court shall, by order, stay the enforcement of the judgment for possession for a period of not less than 60 days from the date of the judgment and may stay the enforcement of the judgment for a period not to exceed 180 days from such date. Any judgment for money or any rent assignment under subsection (b) of Section 9-104.2 is not subject to this stay. *** If at any time, either during or after the period of stay, the defendant pays such expenses found due by the court, and costs, and

reasonable attorney's fees as fixed by the court, and the defendant is not in arrears on his or her share of the common expenses for the period subsequent to that covered by the judgment, the defendant may file a motion to vacate the judgment in the court in which the judgment was entered, and, if the court, upon the hearing of such motion, is satisfied that the default in payment of the proportionate share of expenses has been cured, and if the court finds that the premises are not presently let by the board of managers as provided in Section 9-111.1 of this Act, the judgment shall be vacated. If the premises are being let by the board of managers as provided in Section 9-111.1 of this Act, when any judgment is sought to be vacated, the court shall vacate the judgment effective concurrent with the expiration of the lease term. Unless defendant files such motion to vacate in the court or the judgment is otherwise stayed, enforcement of the judgment may proceed immediately upon the expiration of the period of stay and all rights of the defendant to possession of his or her unit shall cease and determine until the date that the judgment may thereafter be vacated in accordance with the foregoing provisions, and notwithstanding payment of the amount of any money judgment if the unit owner or occupant is in arrears for the period after the date of entry of the judgment as provided in this Section. Nothing herein contained shall be construed as affecting the right of the board of managers, or its agents, to any lawful remedy or relief other than that provided by Part 1 of Article IX of this Act." 735 ILCS 5/9-111(a) (West 2014).

Defendant interprets this provision as limiting plaintiff's remedy to taking possession of his unit and either (1) waiting for him to repay what is owed or (2) leasing the unit to a third party and applying any rents toward his debt.

¶ 27    The plain language of the statute does not support defendant's interpretation. Section 9-111(a) allows a condominium association to obtain a judgment for possession of the premises as well as a money judgment. The statute requires the trial court to "stay the enforcement of the judgment for possession" for 60 to 180 days but specifies that "[a]ny judgment for money *** is not subject to this stay." 735 ILCS 5/9-111(a) (West 2014). If, as defendant urges, a condominium association's method of enforcing any judgment obtained pursuant to section 9-111(a) is limited to physical possession of the delinquent unit, there would be no reason for the legislature to exempt the money judgment from the stay that applies to the judgment of possession. The legislature thus unquestionably intended to allow a condominium association to enforce its money judgment even while the judgment for possession is stayed.

¶ 28    Furthermore, section 9-111(a) of the forcible statute does not impose any particular limitations on an association's mechanisms for enforcing its money judgment, and we are not authorized to read such limitations into the statute. See *Weather-Tite, Inc.*, 233 Ill. 2d at 390 ("We we will not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that conflict with the legislative intent."). To the contrary, the statute explicitly provides that "[n]othing herein contained shall be construed as affecting the right of the board of managers, or its agents, to any lawful remedy or relief other than that provided by Part 1 of Article IX of this Act." 735 ILCS 5/9-111(a) (West 2014). This language suggests that a condominium association may attempt to collect its money judgment by any lawful means available to judgment creditors generally.

¶ 29　　　　Defendant contends that our interpretation of section 9-111(a) of the forcible statute would render section 9-111.1 superfluous and unnecessary. Section 9-111.1 gives a condominium association the right, but not the obligation, to lease a defendant's unit to a third party upon the expiration of the stay of the judgment for possession and specifies that such rents are applied against the defendant's delinquent assessments and the money judgment. 735 ILCS 5/9-111.1 (West 2014). Defendant likewise proposes that cases such as *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450 (2002), and *Gotham Lofts Condominium Ass'n v. Kaider*, 2013 IL App (1st) 120400, support his argument that plaintiff must take possession of his unit and either wait for payment or lease the property to a third party.

¶ 30　　　　Nothing in section 9-111.1 or the cases that defendant cites indicates that this is plaintiff's *only* means of enforcing its money judgment. Contrary to defendant's suggestion, a condominium association's option of leasing the property to a third party is not rendered superfluous or unnecessary just because the association may have other means of enforcing its money judgment. Where a unit owner has limited income and assets, the option of leasing the premises to a third party may be the only way to collect on the judgment. Even if the unit owner is not truly "judgment proof," a condominium association might find it easier and more cost-efficient to lease the premises to a third party than to attempt to collect from the owner personally.

¶ 31　　　　In further support of his argument, defendant emphasizes that the relationship between a condominium association and a condominium owner is different from a landlord-tenant relationship. According to defendant, plaintiff "does not have a contractual right to collect unpaid assessments from [defendant's] general assets[,] contrary to a landlord's ability to collect unpaid rent from a breach of lease from a tenant." Defendant also notes that the Condominium Act provides that the failure of a unit owner to pay toward the common expenses creates a lien on the owner's interest in the property (see 765 ILCS 605/9(g)(1) (West 2014)) and that an association's attorney fees incurred due to an owner's default are deemed part of the owner's share of the common expenses (765 ILCS 605/9.2(b) (West 2014)). Moreover, defendant asserts that the applicable condominium declaration does not impose a general personal liability on him as a unit owner, apart from "being responsible to the association in the event the association enforces its lien rights against the condominium at issue."

¶ 32　　　　Defendant's arguments miss the point. Irrespective of any liens created pursuant to the Condominium Act and irrespective of any rights under the condominium declaration, section 9-111(a) of the forcible statute provides for a money judgment when a unit owner fails to pay his assessments. As explained above, section 9-111(a) of the forcible statute does not limit the available remedies in the manner that defendant suggests. This is a matter of statutory interpretation, not contract law.

¶ 33　　　　We note that plaintiff maintains that defendant's interpretation of section 9-111(a) of the forcible statute conflicts with section 9-107. Section 9-107 provides that where a defendant is not personally served in the action, the court may enter an *in rem* judgment against the unit for the amount owed but may not enter a personal judgment against the defendant. 735 ILCS 5/9-107 (West 2014). It appears that plaintiff construes defendant's position to be that section 9-111(a) contemplates only *in rem* judgments, not *in personam* judgments. In his reply brief, defendant clarifies that he does *not* dispute that section 9-111(a) allows for a "personal judgment" against a condominium owner, such as himself, who is subject to personal service.

Instead, he contends that a condominium association may not enforce such a judgment by any means other than taking possession of the subject unit. For the reasons explained above, defendant's argument contradicts the plain language of section 9-111(a). Accordingly, we need not consider whether defendant's interpretation of section 9-111(a) is also inconsistent with section 9-107.

¶ 34       B. Applicability of Defendant's Affirmative Defenses to the Trial Court's
                    Determination of Plaintiff's Reasonable Attorney Fees

¶ 35       Defendant next contends that the trial court erred by holding that the factors raised by his affirmative defenses could not, as a matter of law, be considered under section 9-111(b) of the forcible statute. Section 9-111(b) provides:

> "For purposes of determining reasonable attorney's fees under subsection (a), the court shall consider:
>
>> (i) the time expended by the attorney;
>>
>> (ii) the reasonableness of the hourly rate for the work performed;
>>
>> (iii) the reasonableness of the amount of time expended for the work performed; and
>>
>> (iv) the amount in controversy and the nature of the action." 735 ILCS 5/9-111(b) (West 2014).

According to defendant, the trial court should have considered, as part of the "nature of the action," that defendant "withheld his assessments before and throughout the litigation believing he had the right to do so, defended the case based on the law of the Second District, and pursued a counterclaim based on the law of the Second District." He submits that it would be unreasonable for plaintiff to recover attorney fees during the "time period when [defendant] believed his defense was meritorious." (Presumably, defendant is talking about fees incurred by plaintiff prior to March 20, 2014, when the supreme court issued its opinion in *Carlson* reversing this court's decision.) Defendant also contends that the trial court should have considered as part of the "nature of the action" all the factors raised by his second, third, and fifth affirmative defenses.

¶ 36       Defendant's second, third, and fifth affirmative defenses each pertained to plaintiff's alleged failure to maintain the common elements and repair his condominium unit. Specifically, as his second affirmative defense, defendant alleged that plaintiff was barred from recovering any contractual attorney fees that were authorized by the condominium declarations and the applicable rules and regulations because plaintiff was in breach of its own contractual, fiduciary, and statutory obligations. As his third affirmative defense, defendant similarly alleged that plaintiff's lawyers "improperly defended wrongful conduct" in connection with plaintiff's failure to repair his unit and "improperly perpetuated this litigation." He further alleged in his third defense that, when plaintiff filed this action, our opinion in *Carlson* justified his assessment arrearage because "he had suffered significant losses at the hands of plaintiff's wrongful conduct." He also noted in his third defense that he had incurred substantial attorney fees of his own as a result of plaintiff's failure to repair his unit. Accordingly, he submitted that "plaintiff brought this forcible entry and detainer action at a time when it had unclean hands and was in breach of its fiduciary and statutory duties," and he urged the court to disallow any award of attorney fees. As his fifth defense, defendant

asserted "lack of causation" because "the attorney fees incurred by the plaintiff are the direct result, in the first instance, of plaintiff's breach of its contractual, fiduciary, and statutory obligations in failing to maintain and repair common elements."

¶ 37       The trial court properly declined to consider the various factors raised by defendant when determining plaintiff's award of attorney fees. Section 9-106 of the forcible statute provides that a defendant may not introduce "by joinder, counterclaim or otherwise" any matters that are "not germane to the distinctive purpose" of the forcible entry and detainer proceedings. 735 ILCS 5/9-106 (West 2014). In *Carlson*, our supreme court held that a condominium association's failure to repair or maintain the common elements is not germane to the proceedings and cannot be raised as a defense. *Carlson*, 2014 IL 115342, ¶ 1. Supreme court decisions typically apply retroactively to cases that are pending when they are announced (*Heastie v. Roberts*, 226 Ill. 2d 515, 535 (2007)), and defendant does not dispute that this general rule applies here.

¶ 38       Pursuant to our supreme court's decision in *Carlson*, it is clear that defendant's affirmative defenses pertained to matters that were not germane to the forcible entry and detainer proceeding. Defendant emphasizes that the supreme court in *Carlson* "never addressed any issue relating to attorney fees." Nevertheless, *Carlson* clearly applies to the present case. If plaintiff's failure to fulfill its obligations to maintain and repair the common elements was never germane to the proceedings in the first place, there was no reason for the trial court to consider that issue as part of the "nature of the action" when fashioning plaintiff's award of attorney fees. To rule otherwise would create an absurd result, which we must presume the legislature did not intend. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 22. As the trial court aptly noted, defendant was attempting to "bring in through the back door what [the supreme court] says cannot be brought in through the front door." To the extent that defendant insists that he reasonably relied on this court's decision in *Carlson* before it was reversed by the supreme court, we note that he did not request a stay of the present proceedings while our decision in *Carlson* was under review. Instead, both parties litigated this case aggressively from start to finish. Accordingly, the trial court properly refused to consider the matters raised by defendant when determining the amount of plaintiff's reasonable attorney fees.

¶ 39                          C. Reasonableness of Plaintiff's Attorney Fees

¶ 40       In a related argument, defendant contends that "when considering the 'nature of the action' under 735 ILCS 5/9-111(b), the attorney fee award of $23,000 is unreasonable." Defendant does not challenge the propriety of any specific charge that the trial court allowed. Instead, he again emphasizes plaintiff's purported breaches of its fiduciary, statutory, and contractual duties and argues that plaintiff failed to supervise its attorneys. Having rejected defendant's contention that the trial court was obligated to consider the affirmative defenses when awarding attorney fees, we need not consider these matters further. However, we note that the trial court closely scrutinized plaintiff's fee petition and awarded less than half of the requested amount.

¶ 41                                    D. Sanctions

¶ 42        Finally, defendant argues that plaintiff should be sanctioned for filing a false affidavit of
compliance. According to defendant, "Mastrogany, and her counsel, deliberately executed,
and filed, a false affidavit of compliance required by Supreme Court Rule 214." Furthermore,
defendant insists that "it was learned during trial that there were *** documents in the form of
work orders that had not been produced." Defendant asserts that "[t]he scheme devised by
[plaintiff], and its lawyers, was to set up a barrier so that counsel for [defendant] could not ask
any questions of any person associated with [plaintiff] who had knowledge about the
documents themselves or about the production of documents." Defendant asks us to sanction
plaintiff by barring its claim for attorney fees. In the alternative, he requests a sanction in the
form of a fine or an order for plaintiff to pay his attorney fees on appeal.

¶ 43        "The imposition of sanctions for the noncompliance with discovery rules and orders rests
largely within the sound discretion of the trial court and will not be disturbed on review absent
a clear abuse of discretion." *Blott v. Hanson*, 283 Ill. App. 3d 656, 661 (1996). Sanctions may
be imposed where a party's failure to comply is unreasonable, which occurs where "the
offending party's conduct is characterized by a deliberate and pronounced disregard for the
rules and the court." *Klairmont v. Elmhurst Radiologists*, 200 Ill. App. 3d 638, 644 (1990).
Sanctions should be designed to coerce compliance rather than to punish the offending party.
*Rosen v. The Larkin Center, Inc.*, 2012 IL App (2d) 120589, ¶ 17. "To the maximum extent
that is practicable, sanctions should be customized to address the nature and extent of the harm
while prescribing a cure to the specific offense." *Locasto v. City of Chicago*, 2014 IL App (1st)
113576, ¶ 27.

¶ 44        The record reflects that the trial court carefully considered defendant's allegations that
plaintiff committed discovery violations. The court acknowledged that Mastrogany's affidavit
was "misleading" in certain respects. Nevertheless, the court found that there was no indication
that she had acted in bad faith. The court also detailed its reasons for declining to impose
sanctions. One reason was the lack of "solid evidence" that plaintiff had actually withheld
documents from defendant. Another reason was that defendant could have requested an
additional certificate of compliance during trial rather than waiting to file a motion for
sanctions after the close of evidence. A third reason was that defendant had suffered no
prejudice, given that (1) he had introduced ample other evidence proving that plaintiff had
failed to timely repair his damaged unit and (2) plaintiff's alleged breaches were not relevant to
the issues at trial. The court's assessment of the circumstances was reasonable, and we cannot
say that there was an abuse of discretion. For the same reasons, we likewise decline to impose
any sanction on plaintiff.

¶ 45        We note that, in its prayer for relief, plaintiff asks for leave to file a petition for attorney
fees and costs related to this appeal. In the alternative, plaintiff asks for the case to be
remanded to the trial court for further proceedings related to that issue. Plaintiff cites no
authority demonstrating its right to appellate fees. Nor does it identify the source of the
purported right to such relief. For example, is the right to fees a contractual right, a statutory
right, or a sanction? Having failed to present a cogent argument in support of its request, any
argument that could have been made is forfeited. See *Sherman Hospital v. Wingren*, 169 Ill.
App. 3d 161, 165 (1988) (party forfeited its request for appellate attorney fees where it cited no
authority and provided no reasoned argument in support of its contention).

- 11 -

¶ 46       In its prayer for relief, plaintiff likewise asks us to remand the case to the trial court for further proceedings related to attorney fees and costs incurred in connection with the posttrial motion and the motion for sanctions. Plaintiff's request is untimely. After the trial court denied defendant's posttrial motion and his motion for sanctions on March 11, 2016, plaintiff's counsel orally requested 14 days to file a supplemental fee petition related to litigating those motions. The court responded that it was "a little surprised" that plaintiff's counsel would seek attorney fees related to the motion for sanctions, given that "the affidavit was misleading, at least[,] if not false." With respect to the posttrial motion, the court said that it "suppose[d]" that counsel could file such a request. The court indicated that it could not stop plaintiff from filing a motion, adding that the court would be happy to rule on such a motion if it were filed, briefed, and argued. Plaintiff's counsel then asked: "But no language with respect to leave to file in the order or can we include such language, just to make clear that we do have at least leave to [*sic*] or are you suggesting I simply bring a motion for leave to file it?" The court replied: "You can bring a motion for leave to file it. I'm not going to grant it now in an oral motion." Despite the court's oral ruling, plaintiff never filed a written motion seeking leave to file a supplemental fee petition. Instead, plaintiff filed only the actual fee petition, and it did not do so within the 14 days that had been requested. The petition was never brought to the court's attention, and the court never ruled on it. Accordingly, plaintiff's request for these fees is untimely and is not properly before this court.

¶ 47                               III. CONCLUSION

¶ 48       The judgment of the circuit court of Lake County is affirmed.

¶ 49       Affirmed.